1

GRISANTI, PLAINTIFF-APPELLANT, *v.* CLEVELAND (CITY) ET, DEFENDANTS-APPELLEES.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 25866.   Decided March 8, 1962.

2

*Mr. George J. McMonagle, Mr. Richard E. McMonagle* and *Mr. Michael T. Gavin,* for plaintiff-appellant.

*Mr. Ralph S. Locher,* director of law, *Mr. Joseph H. Crowley,* chief counsel, *Mr. Daniel J. O'Loughlin, Messrs. Squire, Sanders & Dempsey, Mr. Henry J. Crawford, Mr. John Lansdale, Mr. Dean L. Berry* and *Mr. Alan P. Buchmann,* for defendants-appellees.

Hurd, J. This cause is here appealed on questions of law from a judgment of the Court of Common Pleas wherein the court denied an injunction sought by the plaintiff against the City of Cleveland, the City Council, and the City Planning Commission from expending any public funds for appropriation of property owned by plaintiff or any other property owners in the area known as "Erieview-I-Urban Renewal Project No. Ohio R-36" (hereinafter sometimes referred to as Erieview).

The plaintiff is the owner of a commercial and residential structure located at 1205 St. Clair Avenue within the area which comprises Erieview. An appropriation action was commenced in the Court of Common Pleas by the City under its power of eminent domain which is presently a pending action. This action for injunction was brought to enjoin the City from proceeding with the appropriation proceeding, although concurrently therewith, plaintiff seeks as a taxpayer to enjoin the expenditure

of any public funds for any of the purposes of the Erieview Project.

The City of Cleveland (hereinafter referred to as the City) is a Charter City and acting under authority of its Home Rule powers and pursuant to its ordinances, through the City Planning Commission, gave notice on November 11, 1960, to all property owners within the Erieview Renewal Project area of a public hearing to be held on November 22, 1960. The record shows that the public hearing was called for the purpose of considering the adoption of an urban renewal plan for Erieview-I Project and a general neighborhood renewal plan. The area hereinafter referred to as Erieview comprises approximately 96 acres of land, the major portion of which is zoned as semi-industrial, and lies between Cleveland Memorial Shoreway and Chester Avenue from East Sixth Street to East Fourteenth Street.

The plaintiff, as the owner of the property within this Erieview area, was duly notified in writing of the public hearing and was represented at two such hearings by her son who is an attorney.

Subsequently on November 25, 1960, the City Planning Commission adopted the plan for Erieview and determined that the area in question was blighted and in accordance with the city ordinances, submitted the same to the City Council with its recommendation that Council adopt the plan.

Over the plaintiff's written protest, the City Council, on December 8, 1960, approved the General Neighborhood Renewal Plan for Erieview and Erieview-I Project and also found ''the existence of slum and blighted areas and conditions of deterioration menacing the public health and safety of the citizens of Cleveland.'' Moreover, the City Council adopted an ordinance approving and authorizing the execution of a Loan and Capital Grant Contract with the United States Government to aid in the financing of Erieview, and pursuant thereto, the City of Cleveland entered into a contract with the United States Government for this purpose. The Federal Government agreed to loan to the City the sum of $33,875,784.00 and to make a capital grant of $9,898,784.00 and relocation payments of $805,000.00.

On September 27, 1961, City commenced the aforesaid action now pending in the Court of Common Pleas to appro-

4

priate the property of plaintiff acting pursuant to its power of eminent domain.

The City proceeded to invite bids for the redevelopment of numerous parcels of land within Erieview, including the parcel owned by the plaintiff, and subsequently accepted a bid offered by Erieview Corporation (a corporation for profit) and entered into a project agreement with it on November 9, 1961, in which the City agreed to deliver title to the Corporation "upon the acquisition thereof, and which agreement contained the condition that a forty story building be erected by said Corporation on a parcel of land of which plaintiff's property is a part. Inasmuch as Federal money is to be used, the whole plan is to conform to standards imposed by the United States Government.

This summary of facts is a condensation of the evidence as set forth in the bill of exceptions, the admissions in the pleadings, the numerous exhibits, and the principal documentary evidence, which in capsule form, is as follows:

1) Joint Exhibit A—being the Procedural Ordinance for Urban Redevelopment—passed June 24, 1959.

2) Defendant's Exhibit A—"The Urban Renewal Plan" the general Erieview Project No. I—plan submitted November 22, 1960.

3) Defendant's Exhibit B-1 "Ordinance No. 449-61"—loan and capital grant contract between City of Cleveland and the United States of America—which is an ordinance authorizing the Federal Loan and Grant Contract; accepting factual report of Erieview conditions and determining Erieview to be a slum area. Passed February 20, 1961.

4) Defendant's Exhibit B-2—"Report to Council" by Director of Urban Renewals: Factual report to Council on Erieview conditions. Received February 13, 1961.

5) Defendant's Exhibit C—Ordinance No. 2428-60—Ordinance approving Erieview Project No. I and General Neighborhood Renewal Plan; finding plans properly adopted and in conformity with all requirements and finding entire Erieview area to be blighted, deteriorated and deteriorating. Adopted December 12, 1960.

6) Plaintiff's Exhibit 10—Letter of Protest by the Plaintiff.

The assignments of error are three in number, with certain subheadings, as follows:

"1) The trial court erroneously rejected evidence proffered by the plaintiff in support of her averments that:

"(a) The area in question is not an area blighted, deteriorated or deteriorating, nor detrimental to the public health, safety or welfare and any such finding or determination by the defendants was arbitrary, capricious, contrary to law, and constituted an abuse of discretion and of the powers of the defendants.

"(b) That the threatened taking of plaintiff's property by the exercise of eminent domain was for a private and not for a public use.

"2) The Court erred in failing to enter judgment in favor of the plaintiff and against the defendants since this action established that:

"(a) The attempted appropriation of plaintiff's property is not for a public use.

"(b) Plaintiff is being deprived of her property without due process of law. The constitutional requirements of due notice before adoption of the so-called plan and ordinances which constitute the alleged legal foundation for the City of Cleveland's attempted exercise of the right of eminent domain as to plaintiff's property was not given. No notice whatsoever was given by either the City Planning Commission or the City Council prior to determining that the said area was blighted or deteriorated or deteriorating so that property owners, including the plaintiff, would have an opportunity to be heard in connection therewith.

"(c) The legislative authority, that is, the defendant City Council, did not hold at least two public hearings prior to the adoption and approval of such plan with notice thereof mailed at least twenty-five days before the first hearing to the last known address of the owner of each parcel of land in said area.

"(d) That her real property consists of an improved, standard, commercial and residential structure and her ownership, use and maintenance of it is not detrimental to the public health, safety or welfare.

"3) Finding of the trial court is contrary to and against the manifest weight of the evidence."

Considering assignment of error No. 1-a, it is the contention of the plaintiff in support of her averments that the trial

court erred in rejecting the testimony proffered by the plaintiff to the effect that the area in question is not an area blighted, deteriorated and deteriorating or detrimental to the public health, safety or welfare and that any such finding or determination by the defendants was arbitrary, contrary to law and constituted an abuse of discretion by the trial court.

Relative to this claim, we think it should be noted that a distinction must be made between the class of cases which involve solely the police power of the municipality and the class of cases involving what is commonly referred to as a governmental purpose in the public interest.

The instant case is one for a public purpose in the nature of self-improvement under the City's plan of Urban Renewal.

This is well illustrated by a comparison of two cases decided by the Supreme Court. As pointed out by the defendants, paragraph 6 of the syllabus in *Benjamin* v. *City of Columbus*, 167 Ohio St., 103, 146 N. E. (2d), 854, states the rule for police power cases:

"Whether an exercise of the police power does bear a real and substantial relation to the public health, safety, morals or general welfare of the public and whether it is unreasonable or arbitrary are questions which are committed in the first instance to the judgment and discretion of the legislative body, and, unless the decisions of such legislative body on those questions appear to be clearly erroneous, the courts will not invalidate them."

Contrasted with this is a limitation on judicial inquiry in public improvement cases as exemplified by paragraph 8 of the syllabus in *Railroad Company* v. *Defiance*, 52 Ohio St., 262, 40 N. E., 89, which was an action to enjoin a road improvement that would compel the plaintiff to move or remove its bridges:

"The comparative dangers in the use of grade and overhead crossings, and the relative public benefits and private disadvantages that may result from a contemplated improvement of the streets are matters for the consideration of the members of the council, who are the sole judges of the propriety, as well as of the necessity of the improvement; and their decision, when not transcending their powers, nor induced by fraud, is not subject to judicial revision."

Attention is also called to the case of *State, ex rel. Kittel* v.

*Bigelow*, 138 Ohio St., 497, 37 N. E. (2d), 41, which states the limit on judicial review of a city council's determination of the number of signatures on a petition as follows:

"The determination by the legislative authority of a municipality that there are sufficient signatures on a petition to require submission of a proposed charter amendment to the electorate is conclusive in the absence of fraud or a gross abuse of discretion."

Thus it is clear that there is a real difference between a court's examination of a legislative determination to see if it is "clearly erroneous" as in police power cases, and the substitution of its judgment for that of the legislative body on a showing of fraud or gross abuse of discretion when passing upon the validity of legislative action to carry on public improvements in the interest of public welfare.

An important case is *Berman v. Parker*, 348 U. S., 26, decided by the Supreme Court of the United States in 1954, which rejected the request of the owners of a non-blighted department store to review all of the legislative determinations upon which the development plan was based. The court held:

"Once the question of the public purpose has been decided, the amount and character of land to be taken for the project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch."

Likewise in *Kaskel v. Impellitteri*, 306 N. Y., 73, 115 N. E. (2d), 659, the court ruled that there was no basis for it to reject the legislative determination, holding the fact question not to be justiciable. At page 80, the court said:

"Therefore, the question here is not whether certain public officials have acted arbitrarily or unwisely in coming to a certain conclusion. Here we have a naked question of legality, that is, of power, and the particular power to make a determination on this matter of judgment has been conferred by statute on these defendants. Four different public bodies have, after adequate investigation and consideration which appears in the record, determined that this area may properly be considered substandard and insanitary. * * *"

"* * *

"The situation here actually displayed is one of those as to which the Legislature has authorized the city officials, including

elected officials, to make a determination, and so the making thereof is simply an act of government, that is, an exercise of governmental power, legislative in fundamental character, which, whether wise or unwise, cannot be overhauled by the courts. If there were to be a trial here and the courts below should decide in favor of plaintiff, there would be effected a transfer of power from the appropriate public officials to the courts.''

Thus we conclude that the City, acting through the Planning Commission and the City Council, was acting in its exercise of governmental power for a public purpose by reason of which the court is not permitted to substitute its judgment for the judgment of the legislative body of the City.

In considering this question, it should be observed that the trial court did not exclude evidence relating to the basis upon which the City Council acted or to any evidence, documentary or otherwise, presented to or before City Council, nor was any evidence excluded concerning the Erieview Corporation, the company which has contracted to build the forty story building which is to rest, in part, on plaintiff's land, and no evidence was rejected concerning the purposes of Erieview.

The extensive evidence here shows that the legislative body of the City had before it a great mass of factual data upon which to make its legislative judgment that the area in question is, in fact, a blighted area, deteriorated and deteriorating, and, as a consequence, detrimental to public health, safety and welfare. Thus, we conclude from all the documentary evidence above described and all other evidence contained in the record that the findings of the trial court must be sustained.

It is clear, upon an examination of the documentary evidence, that Section 1-5105 of The Cleveland Procedure Ordinance, which is Joint Exhibit A, entitled ''Approval of Plan'' requires that an ordinance be adopted approving an Urban Renewal Plan which shall include a finding and determination that the area in question is, in fact, blighted, deteriorated and deteriorating. The Cleveland City Council, by Ordinance No. 2428-60, passed December 12, 1960, adopted the Erieview Plan and made the legislative finding that the area included in Erieview ''is a blighted, deteriorated and deteriorating area of the City of Cleveland'' within the purview of Section 1-5102 of the

Codified Ordinances of the City of Cleveland. Furthermore, in accepting "The Loan and Capital Grant Contract" with the Federal Government to carry out the Erieview Project-I, the City Council once again made an express finding to the same effect. Thus it appears from this and other evidence that the City complied with all procedural requirements in accordance with its laws and ordinances in adopting the Urban Renewal Plan for Project-I and the General Neighborhood Renewal Plan. Such was the finding of the trial court which we must sustain on the basis of competent evidence disclosed in the record and the rule of law defining legislative power when used for a public or governmental purpose.

On this basis, it would be clearly incompetent to admit testimony of individuals interested, expert, or otherwise, to testify contrary to the findings and judgment of the City Planning and Legislative Bodies which considered and adopted the plan. This is especially true since the evidence shows that ample opportunity was afforded to all property owners to be heard in opposition to the findings of Council. The notice to property owners in the area, in part, contained the following:

"The Cleveland City Planning Commission has heretofore determined the above-described areas to be both blighted or deteriorated and deteriorating areas within the definition of Section 1.5102 of the Codified Ordinances of the City of Cleveland.

"The purpose of this hearing is to consider the proposals of the Urban Renewal Plan, and to afford to all persons or organizations present thereat an opportunity to be heard, prior to the adoption of said plan by the City Planning Commission, and its referral to the Council of the City of Cleveland for approval as provided for in Sections 1.5104 and 1.5105 of the Codified Ordinances of the City of Cleveland.

"*Documents comprising the proposed Urban Renewal Plan for Project No. 1 and the General Neighborhood Renewal Plan are available for public inspection at 520 City Hall, Cleveland, Ohio.*" (Emphasis added.)

The trial court found that the notice of which the above quoted section is a part was adequate and reasonable as provided in Section 1.5104 of the Ordinances of the City, a finding of fact which, upon examination of the procedural ordinances of the City, including Section 1.5104, we sustain.

Having determined that the judicial branch of the government may not substitute its judgment for the legislative branch unless it is clearly shown that the legislative branch has exceeded its constitutional powers or has acted fraudulently or in bad faith, or has abused its discretion, we are obliged to sustain the trial court in rejecting the evidence proffered by the plaintiff. There is no claim here of fraud or bad faith. There is, however, the claim of an abuse of discretion upon the part of the City Planning Commission and the City Council. Upon consideration of the record, the exhibits, and all other evidence, we are of the opinion that the trial judge did not err in finding that there was not an abuse of discretion upon the part of the City Council, acting in its legislative capacity for a public purpose, or upon the part of the Planning Commission, it being understood that the Planning Commission was acting in an official capacity as a fact-finding body for the City Council. For the reason stated, assignment of error 1-a is overruled.

We come now to a consideration of assignments of error 1-b and 2-a, both of which involve substantially the same claim, namely that the attempted appropriation of plaintiff's property is for a private and not for a public use. The contention here made is the same as was made in the case of *State, ex rel. Bruestle* v. *Rich*, 159 Ohio St., 13, 110 N. E. (2d), 788. Syllabus 1 of that case reads:

"1. Where an urban redevelopment project contemplates the acquisition of property located in a slum area, the elimination of slum conditions in the area by clearing therefrom the buildings and making the land available for redevelopment and the subsequent sale of the land for redevelopment with restrictions as to its use which will insure against recurrence of slum conditions, and where such project apparently has as its primary purpose the elimination of slum conditions and provisions against their recurrence, such project may involve a public use or purpose for which public funds can be expended and the power of eminent domain exercised."

The evidence here shows that Federal money is to be used and the purpose of the plan is to prevent the recurrence of blighted conditions and the plan conforms to standards imposed by the United States Government.

Referring again to the *Bruestle case,* syllabus 4 reads:

"4. If the primary purpose for the exercise of the power of eminent domain is to acquire the property for the public welfare within the meaning of Section 19 of Article I of the Ohio Constitution, the power may be exercised even where there may be an incidental nonpublic use of the property or benefit from its taking."

Judge Taft, speaking for the court in the *Bruestle case,* made the following significant statement at page 22:

"An examination of those ordinances and of that contract clearly discloses that the redevelopment of this area contemplates the acquisition by the city, either by purchase or through the exercise of the right of eminent domain, of the property located in the area, the elimination of slum conditions in the area by clearing therefrom the buildings and making the land available for redevelopment, and the subsequent sale of the land for redevelopment with restrictions as to its use which will insure against recurrence of any slum or other conditions of blight; and discloses that the primary purpose of the redevelopment of this area is to eliminate the slum conditions and other conditions of blight and provide against their recurrence."

Judge Taft further stated:

"The validity of urban redevelopment projects similar to the project involved in the instant case has been uniformly sustained by the courts of last resort in other states."

(Citing authoritative cases from Alabama, Arkansas, Illinois, Michigan, New York, Pennsylvania, Rhode Island and Tennessee.)

In headnote 2 of *Schenck* v. *Pittsburgh,* 364 Pa., 31, it is stated:

"2. Where the right of eminent domain is vested in a municipality, an administrative body, or even a private corporation, the question as to whether the circumstances justify the exercise of the power in a given instance is not a judicial one, at least in the absence of fraud or palpable bad faith."

In *Zurn* v. *City of Chicago,* 389 Ill., 114, headnote 2, is found the following:

"2. Constitutional Law—Neighborhood Redevelopment Corporation Law of 1943 is not invalid as authorizing taking private property for other than public use. As the legislature

has determined that the elimination of conditions conducive to ill-health, transmission of disease, infant mortality, juvenile delinquency, crime and poverty as enumerated in section 2 of the Neighborhood Redevelopment Corporation Law of 1943 is in the interest of health, morals, safety and general welfare of the citizens of the State, the Supreme Court cannot say that the legislative finding that the elimination and redevelopment of slum and blight areas is a public purpose is unwarranted, and such use constitutes a public use regardless of the use to be made of the property after the redevelopment has been achieved.''

Also, in the Opinion of the Justices, No. 119, 254 Ala., 343, headnote 2, there is the following:

''2. The statute authorizing taking of land in slum area by housing authority through exercise of power of eminent domain and disposal of such land at its use value in accordance with plan for redevelopment by private enterprise or by public agencies authorizes a taking for a 'public use' permitted by the constitution, in view of the public benefit resulting from slum clearance and redevelopment.''

A pertinent declaration is also made in *Berman* v. *Parker*, 348 U. S., 26, a case cited by the trial court at pages 33 and 34:

''* * * Once the object is within the authority of Congress, the means by which it will be attained is also for Congress to determine. Here one of the means chosen is the use of private enterprise for redevelopment of the area. Appellants argue that this makes the project a taking from one businessman for the benefit of another businessman. But the means of executing the project are for Congress and Congress alone to determine, once the public purpose has been established. See *Luxton* v. *North River Bridge Co., supra*; cf. *Highland* v. *Russell Car Co.*, 279 U. S., 253. The public end may be as well or better served through an agency of private enterprise than through a department of government—or so the Congress might conclude. We cannot say that public ownership is the sole method of promoting the public purposes of community redevelopment projects. * * *''

For the reasons stated, we sustain the conclusions of fact and law found by the trial court and, therefore, overrule assignments of error 1-b and 2-a.

This brings us to a consideration of appellant's assignments of error Nos. 2-b, 2-c and 2-d, which will be considered together. The claims of appellant that she was not accorded due process of law are grounded primarily on her claim that the court did not follow Section 725, et seq., Revised Code, which was repealed April 24, 1961. The contention of the City is that the action here taken was under authority of its Home Rule powers under Article 18, Section 3, of the Ohio Constitution, which provides:

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

This grant of power, as contended by the appellee, is self-executing and plenary, except only as limited by parallel constitutional provisions. We are of the opinion that this grant of power applies to the facts of the instant case, as the City of Cleveland, under its Home Rule Charter, may undertake and carry out all provisions for self-improvement, a proposition which has been upheld by numerous decisions of our Supreme Court.

Referring once again to the *Bruestle case, supra,* syllabus 7 reads:

" 'All powers of * * * self-government' as set forth in Section 3 of Article XVIII of the Ohio Constitution include the power of eminent domain."

and syllabus 9 reads:

"No provision of the Constitution of Ohio authorizes the interference by general laws with the exercise of the power of eminent domain, to the extent that such power is granted to municipalities by Sections 3 and 10 of Article XVIII of that Constitution."

See also: *Froelich* v. *City of Cleveland,* 99 Ohio St., 376, 124 N. E., 212; *State, ex rel. City of Toledo,* v. *Weiler,* 101 Ohio St., 123, 128 N. E., 88; *State, ex rel. Gordon* v. *Rhodes,* 156 Ohio St., 81, 100 N. E. (2d), 225; *Angell* v. *City of Toledo,* 153 Ohio St., 179, 91 N. E. (2d), 250; *State, ex rel. McClure* v. *Hagerman,* 155 Ohio St., 320, 98 N. E. (2d), 835; *Babin* v. *City of Ashland,* 160 Ohio St., 328, 116 N. E. (2d), 580; *State, ex rel. Leach* v.

14

*Redick,* 168 Ohio St., 543, 157 N. E. (2d), 106; *State, ex rel. Bindas* v. *Andrish,* 165 Ohio St., 441, 136 N. E. (2d), 43.

We, therefore, overrule assignments of error Nos. 2-b, 2-c and 2-d.

Proceeding to consider assignment of error No. 3, as previously stated, this appeal is on questions of law, therefore, inasmuch as this court does not have the case for trial de novo, we are bound by the findings of fact of the trial judge as shown in his written opinion where supported by credible evidence in the record. The trial judge had the opportunity of hearing the testimony of the witnesses first hand, was in a position to appraise their interest in the cause, their manner of testifying and their candor while testifying on the witness stand. The trial judge also had before him all of the documentary evidence, including the ordinances of the City of Cleveland, the Urban Renewal Plan, the Loan and Capital Grant Contract between the City of Cleveland and the United States of America, the report to Council by the Director of Urban Renewal and the ordinance approving the Erieview Project-I and General Renewal Plan, as well as other exhibits. Upon an examination of all of the evidence, we cannot conclude that the findings of the trial court were contrary to the manifest weight of the evidence and, therefore, assignment of error No. 3 is overruled.

In this context, we again point to the decision of the Supreme Court of the United States in the case of *Berman* v. *Parker, supra,* where at page 33, the court stated:

"We do not sit to determine whether a particular housing project is or is not desirable. The concept of the public welfare is broad and inclusive. See *Day-Brite Lighting, Inc.* v. *Missouri,* 342 U. S., 421, 424. The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled. In the present case, the Congress and its authorized agencies have made determinations that take into account a wide variety of values. It is not for us to reappraise them. If those who govern the District of Columbia decide that the Nation's Capitol should be beautiful as well as sanitary, there is nothing in the Fifth Amendment that stands in the way."

If we substitute the Council of the City of Cleveland for Congress and the Planning Commission of the City as one of its authorized agencies, and the City of Cleveland for the District of Columbia, the words of the United States Supreme Court have equal application to the facts of the instant case, bearing in mind that the taking of property in such a case is for a public use and is authorized under the provisions of the Home Rule Charter of the City of Cleveland and the Ohio Constitution.

Thus, it appears that the acquisition by the City of all of the various properties and the titles thereto is only a means to an end. The objective is the elimination of blighted areas and the subsequent reconveyance of part or all of said land to the redeveloper or redevelopers with exclusive restrictions on the use of the land to prevent recurrence of blight. It is a plan national in scope. The plan is not confined to slum clearance or public housing, although these limited objectives may be part of an entire Urban Renewal program. In this and similar cases, the plaintiff is protected by being adequately compensated for her property, either through direct negotiation with the City or by the finding of a jury in the appropriation proceeding which is now pending in the Court of Common Pleas against the plaintiff's property. The plaintiff, by the action here, indicates her complete disapproval of such procedures on the ground that her individual property cannot be classified as blighted, but the trial court found that her property, although not blighted, was within a blighted area, a finding of fact which we must sustain. This presents a situation wherein the plaintiff's natural wishes to retain her property are subordinated to the good and welfare of the community as a whole. It is the inevitable result of the absolute necessity of the City, acting in good faith, to eliminate and prevent urban blight and deterioration and to give an opportunity to the City to thrust forward with a comprehensive urban renewal plan for the benefit of the entire community.

There appearing to be no errors prejudicial to the plaintiff on the face of the record, the judgment of the Court of Common Pleas is affirmed.

Exceptions may be noted and a journal entry drawn in accordance herewith.

KOVACHY, P. J., and SKEEL, J., concur.