[No. 40132.    En  Banc.    October 9, 1969.]

ANDREW  N.  APOSTLE  *et al., Respondents,*  v.  THE  CITY  OF
SEATTLE, *Appellant.**

*Reported in 459 P.2d 792.

A. L. *Newbould* and *Gordon F. Crandall,* for appellant.

*Schweppe, Doolittle, Krug & Tausend* and *David G. Knibb,* for respondents.

HILL, J.—This is an appeal by the City of Seattle from a judgment of the King County Superior Court granting an injunction permanently prohibiting the city from proceeding with the University Addition-Northlake Urban Renewal Project.

The area included in the project and claimed to be blighted is adjacent to the southern part of the western boundary of the campus of the University of Washington, and is bounded on the north by Northeast 40th Street, on the east by University Way Northeast (which separates the campus from the project area), on the south by Northeast Boat Street, and on the west by the University Bridge.

The University has agreed to buy and develop the property within the project area if the city acquires it under the Urban Renewal Law (RCW 35.81).

A group of property owners in the area brought this action in the Superior Court for King County seeking to have the determination of "blight" declared arbitrary and capricious and to enjoin the city from proceeding with the project. On March 30, 1965, the superior court, feeling that it was bound to accept the city council's determination as to blight under *Miller v. Tacoma,* 61 Wn.2d 374, 378 P.2d 464 (1963), dismissed the action. The property owners appealed, and we held in *Apostle v. Seattle,* 70 Wn.2d 59, 422 P.2d 289 (1966) that the findings of the city council were not sufficiently specific to make possible a determination as to whether the findings were founded upon criteria which would satisfy the required constitutional public use upon which an urban renewal project must be based. (*See Miller v. Tacoma, supra.*) The case was therefore remanded to the superior court

with instructions to set aside its order of dismissal and to grant the property owners' motion to send the case back

to the Seattle City Council to enable it, if it can, to make a specific finding of the existence of conditions within the area having an effect on public health, safety, morals, or welfare that are sufficient to constitute "blight."

*Apostle v. Seattle, supra* at 66. The superior court vacated its judgment and remanded the case to the city council which reconsidered all the evidence presented at its previous hearing and also heard new arguments concerning the evidence. The council adhered to its determination that the area was blighted and made the following findings.

That the University Addition—Northlake Urban Renewal Project area established by Ordinance 92314 was, on August 23, 1963, a "blighted area" as defined in RCW 35.81.010 (2) by reason of the following:

(1) The substantial physical dilapidation, deterioration, defective construction and age or obsolescence of building or improvement, both residential and non-residential. In the project area 8 buildings had at least two major and two minor structural deficiencies, an additional 39 buildings had three or more major structural deficiencies, an additional 7 buildings were frame structures over fifty years old with two or more major structural deficiencies, an additional 14 buildings had a fire department rating of "poor", "very poor" or "hazardous" and had one or more major and two or more minor structural deficiencies, and the foregoing 68 buildings constituted 51% of the 134 principal buildings remaining at the time of the hearing on August 23, 1963.

(2) Insanitary and unsafe conditions, and inadequate provision for ventilation, light, proper sanitary facilities, and open space. In the project area 15 buildings containing 42 dwelling units had insanitary conditions and 5 buildings made inadequate provision for light and air.

(3) Inappropriate or mixed uses of land and buildings. The project area is zoned general commercial (CG) and many commercial uses such as cabinet shops, a paint shop, a bakery shop, an underground fuel depot, some warehouses, a food processing plant, a printing shop, a feed shop, and a commercial cleaning shop existed side by side with residential uses.

(4) The existence of conditions which endangered life or property by fire and other causes, including severe windstorm and earthquake. In the project area 117 build-

ings, including accessory buildings, were in poor, very poor and hazardous condition as to fire risk.

(5) By reason of the foregoing, conditions existed in the area which were detrimental and constituted a menace to the public health, safety, welfare and morals in its condition as of August 23, 1963.

The city then filed these findings with the superior court and moved for a summary dismissal of the action. The superior court refused, believing that its order to vacate the first judgment terminated the litigation and thus deprived the court of jurisdiction. The city petitioned this court for a writ of mandamus requiring the superior court to assume jurisdiction. The writ issued. The superior court then assumed jurisdiction, heard the arguments, and denied the city's motion for a summary dismissal. Upon further deliberation, the superior court granted the plaintiff landowners a judgment permanently enjoining the city from proceeding further with the urban renewal project. The trial court felt that the actions of the city with regard to the project were arbitrary and capricious in that, while the city council found the area to be blighted, it had never through its fire and health departments notified the property owners of the deficiencies alleged against their property so that they could correct them or contest them. The trial court further concluded that the area was not blighted in fact, and that the urban renewal statute denied due process of law since it required only 10 days' notice in advance of the hearing and did not provide adequate standards for conducting the hearing.

The city appeals presenting the basic issues of whether the evidence supports the city council's findings that the area is blighted, and whether those findings are based on proper constitutional public uses. With his characteristic forthrightness, the late Judge James W. Hodson declared the findings were

so grossly and flagrantly in conflict with the official conduct of the same city department during the [investigation] in not enforcing . . . laws and ordinances . . . as to render the finding [of blight] based on the

investigation not entitled to belief—and this court does not believe them.

■ Had any member of this court been in Judge Hodson's place, his reaction might have been the same, but, fortunately or unfortunately, the judiciary does not have the responsibility of passing on the credibility of the witnesses, or of weighing the evidence with reference to blight in such a proceeding. Our two previous discussions of the Urban Renewal Law (*Apostle v. Seattle,* 70 Wn.2d 59, 422 P.2d 289 (1966); *Miller v. Tacoma,* 61 Wn.2d 374, 378 P.2d 464 (1963)), make explicit the limits on the power of the trial court in its review of urban renewal proceedings. In those cases we pointed out that the legislature has made the local governing body (the city council in this instance) the tribunal which makes the factual determination of blight.[1] The province of the court is only to determine whether the factual determination of blight is supported by sufficient evidence to prevent the city council's determinations from being arbitrary and capricious. The trial court may not overrule the city council's determination of blight merely because it believes that the area is not blighted. As we stated in the first *Apostle* opinion 70 Wn.2d at 64-65:

[T]he conclusion of the trial court on the issue of blight (likewise, the conclusion of this court) is not material, as neither this court nor the superior court has been designated by the legislature to determine from the evidence submitted whether or not an area is "blighted." . . .

The courts will not interfere with a determination by a local governing body merely because of lack of accord with its conclusion, provided, in cases such as this: (a) the protesting property owners have been given an adequate opportunity to be heard; (b) it is clear that criteria have been applied which will support a constitutional public use; and (c) there is sufficient evidence supporting the specific finding or findings of fact upon which an ultimate determination of "blight" is based to prevent its

[1]The definition of "blighted area" is found in RCW 35.81.010(2) and is quoted in *Miller v. Tacoma,* 61 Wn.2d 374, 378 P.2d 464 (1963) at 380. To be "blighted," an area does not have to be a slum as some seem to believe. This is not a slum clearance project.

being regarded as an arbitrary or capricious determination.

In this case: (a) the property owners were given notice of the hearing as required by the statute and were thus given an adequate opportunity to be heard, and those who desired to speak were heard; (b) the city council found the conditions of the property in the area to be detrimental to the "public health, safety, welfare and morals," thus applying criteria supporting a proper constitutional public use; and (c) the evidence considered by the city council was sufficient, if believed, to warrant such a finding of blight. In connection with (c), it should be pointed out that there was little evidence presented to contradict the contention that the area was blighted; the property owners elected to place their reliance on what they regarded as the inadequacy of the evidence of blight.

The property owners argued, and the trial court found, that the city's actions regarding the renewal area were inconsistent in that the building, fire and health departments did not notify the property owners in the area of the defects in their property, and made no attempt to enforce the building, fire and health ordinances, which, if enforced, would have corrected the deficiencies which were used as evidence of blight.

The failure of municipal authorities to enforce such ordinances is no justification or excuse for the failure of property owners to comply therewith. Moreover, the authorities were faced with certain practical problems. The testimony of a fire department captain was that in its normal inspections his department was primarily concerned with hazardous conditions rather than with conditions of blight. If a condition was found to be hazardous, notice was given, but if the structure was substandard, though not presently hazardous, it was his opinion that it would be fruitless to send notice to the owners since (1) there is no law requiring anyone to maintain a residence adequate in all respects; (2) very few people would be likely to correct a substandard condition, because it was common knowledge

that the property would be taken in the near future for use by the University and thus the investment probably could not be fully recovered; [2] and (3) it would be inequitable to require improvement when the property was going to be taken in the immediate future. This explanation, echoed by the council members at the 1967 hearing, explains in part the failure to give notice of the defects to the property owners.

The existing status quo in the area removes any implication of arbitrary and capricious action by reason of failure on the part of city authorities to enforce building, fire and health ordinances.

Since all three of the conditions set out in the first *Apostle* opinion have been fulfilled ((a) adequate opportunity to be heard; (b) criteria of constitutional public use applied; and (c) sufficient evidence to support findings of blight with no arbitrary or capricious action by the city established), we conclude that the city should be allowed to proceed with the project. The motives of the city and the University in desiring to qualify for federal aid through this particular urban renewal project are not an issue here if the property involved is in fact in a blighted area. Though we may not agree with the city council in its determination that this was a blighted area, its determination was neither arbitrary nor capricious.

This would conclude the matter were it not for the conclusion of the trial court that the Urban Renewal Law (RCW 35.81) violates due process of law because (1) it does not provide adequate notice prior to the hearing on blight; (2) it does not require that a property owner be notified of the defects alleged against his property so that he would have an opportunity to correct or contest the

---

[2] As indicated in our previous opinion in this case (*Apostle v. Seattle*, 70 Wn.2d 59, 61, 422 P.2d 289 (1966)) the fact of ultimate acquisition by the University of Washington seems to be accepted; and the property owners' interest apparently is who is to be the condemnor, and under what statute the property is to be acquired. This naturally removes any incentive to make substantial improvements.

alleged defect; and (3) it does not present a fair and adequate procedure for the conduct of the hearing in that it does not provide standards for presentation or cross-examination of testimony or evidence.[3]

The city argues that our previous opinion in this case disposed of the due process issues contrary to the property owners' contentions and that under the law of the case doctrine, this disposition is binding on this appeal, foreclosing this argument.

■ The property owners reply that the law of the case doctrine does not apply to an erroneous interpretation of the law, and thus our previous opinion must be reexamined in the light of the new arguments. It is true that the law of the case does not require automatic application of the law of a prior decision (*see Greene v. Rothschild*, 68 Wn.2d 1, 402 P.2d 356 (1965), and on rehearing disposing of the issue raising the law of the case doctrine, 68 Wn.2d 5, 414 P.2d 1013 (1966)), but we are convinced that our prior conclusion on the due process issue on this case, if it were not dictum, is correct.

■ ■ It is implicitly recognized in *Miller v. Tacoma, supra*, and in the first *Apostle* opinion, and explicitly stated in numerous cases from other jurisdictions, that the hearing on the issue of blight in an urban renewal proceeding is legislative in nature, rather than judicial. *See e.g., Wilson v. Long Branch*, 27 N.J. 360, 142 A.2d 837 (1958). It has long been recognized that a legislative hearing is not subject to the stringent substantive and procedural safeguards that apply to a judicial hearing. *Grisanti v. Cleveland*, 18 Ohio Op. 2d 143, 179 N.E.2d 798 (1961), *aff'd*, 89 Ohio L. Abs. 1, 181 N.E.2d 299 (Ct. App.), *appeal dismissed*, 173 Ohio St. 386, 182 N.E.2d 568, *appeal dismissed*, 371 U.S. 68, 9 L. Ed. 2d 119, 83 S. Ct. 111 (1962). In fact, all

---

[3]The statutory requirements as to the hearing (notice, etc.) are set forth in RCW 35.81.060(3), and the necessary findings are set forth in RCW 35.81.060(4) and were quoted verbatim in notes 1 and 2 of the original *Apostle* case. Not only is notice by publication in a newspaper required, but notice must be sent by mail to every reputed property owner at the address indicated on the tax roll.

the urban renewal cases we have found hold that due process is not violated by notice given under statutes similar to ours. Nor does the absence of procedural guidelines for the hearing on the issue of blight in an urban renewal proceeding constitute any failure of due process. *Robinette v. Chicago Land Clearance Comm'n,* 115 F. Supp. 669 (N.D. Ill. 1951); *Ross v. Chicago Land Clearance Comm'n,* 413 Ill. 377, 108 N.E.2d 776 (1952); *Zurn v. Chicago,* 389 Ill. 114, 59 N.E.2d 18 (1945); *Wilson v. Long Branch, supra; David Jeffrey Co. v. Milwaukee,* 267 Wis. 559, 66 N.W.2d 362 (1954). The rationale underlying these decisions is well stated in the landmark decision of *Zurn v. Chicago, supra* at 132.

> No such notice to the property owners is necessary to comply with the requirements of due process of law. No property is taken in this proceeding under section 42 [corresponding to the hearing on blight in this case]. The property rights of the landowners are in nowise affected. This is merely another of the steps required by the statute authorizing a redevelopment corporation to exercise the power of eminent domain. After such certificate is issued and suit is filed for the taking of property by the exercise of the power of eminent domain, the court, in such suit, will determine for itself whether or not the steps have been taken and the precedent conditions met by the redevelopment corporation, authorizing it to exercise such power. . . .
>
> . . . The court, in any condemnation suit instituted by a redevelopment corporation, will determine whether these conditions precedent to the exercise of the right have been complied with. The hearing, therefore, in the suit in which it is sought to acquire property by eminent domain. gives to the property owner the right and the opportunity to be heard upon all questions on which he is entitled to a hearing and fulfills all the requirements of due process of law.

In the present case, the hearing determined only that the area was blighted, but it did not affect any particular property. No property will be taken except by voluntary sale through negotiation or by condemnation. Any property owner who believes that his property is being taken in

violation of due process of law can have the question litigated in a condemnation proceeding. We are in accord with the cases cited above and hold that the procedural aspects by which the city council arrives at its determination that an area is or is not blighted do not violate the due process clauses of the United States Constitution or the Washington State Constitution.

Having now disposed of the due process issue raised by the respondent property owners, and having heretofore disposed of their contention that the action of the Seattle City Council was arbitrary and capricious in finding that the area in question was a "blighted area," and having further found that there was substantial evidence to sustain the finding of blight, and that proper constitutional criteria was used in evaluating that evidence to support a constitutional public use, the judgment granting a permanent injunction is vacated. This action is remanded to the Superior Court for King County with the direction that it be dismissed with prejudice.

ALL CONCUR.

---

February 9, 1970. Petition for rehearing denied.