**PRUDENTIAL BUILDING & LOAN ASSOCIATION, Appellant,**

**v.**

**URBAN RENEWAL AND COMMUNITY DEVELOPMENT AGENCY OF LOUISVILLE et al., Appellees.**

Court of Appeals of Kentucky.

March 12, 1971.

Joseph E. Stopher and William P. Swain, Boehl, Stopher, Graves & Deindoerfer, Louisville, for appellant.

Garner M. Petrie, Lacey T. Smith, Dennie J. Haugh, Louisville, for appellees.

CULLEN, Commissioner.

An urban renewal plan for the "West Downtown" area of Louisville was amended by extending its area to include one block in which is a building, with parking space, owned by Prudential Building & Loan Association, and part of another block. Prudential brought suit to enjoin the inclusion of its property in the project. Judgment was entered denying the relief sought, and Prudential has appealed.

The original project area, established in 1962, extended from Market Street on the north to Broadway on the south, (a distance of 6 blocks), and from Sixth Street on the east to Fifteenth Street on the west, (a distance of 9 blocks). It embraced 54 square blocks. In 1967 the plan was amended to bring in a short block bounded by Sixth Street on the west, by Armory Place (which lies between Sixth and Fifth Streets) on the east, by Jefferson Street on the north and by Liberty Street on the south, and to bring in the northern half of the block lying immediately to the south of the above block. The Prudential property

lies in the first-mentioned block. Prior to adoption of the amended plan by the Board of Aldermen a public hearing was held by the urban renewal agency in accordance with KRS 99.370 on the question of adoption of the plan in its amended form. The resolution of the Board of Aldermen found that the entire area, in its amended form, constituted a "blighted area" within the meaning of KRS 99.340(2) and thus was appropriate for urban renewal and development.

Prudential's primary contentions are (1) that there is no statutory authority by which an urban renewal plan can be amended so as to embrace additional territory, and (2) even if the authority may be implied, such an amendment cannot be made without a specific finding that the *added territory, by itself,* is blighted. Prudential concedes that although its property was not in itself blighted, it could have been included in the project originally if found necessary to the accomplishment of an over-all plan for an area which *as a whole* was blighted. See Miller v. City of Louisville, Ky., 321 S.W.2d 237; Dinwiddie v. Urban Renewal and Community Development Agency of Louisville, Ky., 393 S.W.2d 872.

The project here in question was instituted under the provisions of the Act of 1950 compiled as KRS 99.330 to 99.510. It is true that there is no specific provision in that Act authorizing an amendment of a plan to embrace additional territory. We are not convinced of any valid reason, however, why express authority should be required for such an amendment. We think that authority may be implied to add territory by amendment if consistent with the purposes of the Act and if done in good faith. However, for the reasons hereinafter stated, it is our opinion that the procedural processes by which the amendment is to be accomplished must meet certain standards which perhaps may not be required in the original establishment of a project.

As hereinbefore stated, property may be included in the area of an urban renewal project if (1) it is itself blighted or (2) its inclusion is found necessary to the accomplishment of the over-all plan. We think this applies both to original inclusion and to inclusion by amendment. However, in the case of inclusion by amendment we believe that the circumstances may be such as to place on the urban renewal agency and/or the city legislative body a *burden* of justification that perhaps does not arise in the case of original creation of a project. In the instant case, five years had elapsed from the time of the establishment of the original project to the time of the amendment. The territory added by the amendment was in the form of a small irregular protuberance upon the former rectangularly shaped area. The added territory was not intended to be used for *housing* development, which under KRS 99.340 (2) is the predominant purpose of redevelopment of a blighted area. Some of the added territory plainly was not itself blighted. Under those circumstances, we think, a *presumption* existed that the added territory was not blighted and was not necessary to the accomplishment of the over-all renewal plan. Prima facie, then, the territory could not validly be included in the project. This being so, clearly it was not enough for the city legislative body simply to make the generalized finding that the area as amended was blighted. We think a specific finding was required that the added territory was itself blighted or that it was necessary to the accomplishment of the over-all project, by reason of *stated facts* such as would appear reasonably to warrant such a finding. And we think that because of the presumptive invalidity of the amendment, it was required for due process that the finding be based on facts developed at an evidentiary hearing, of which a record be made. Cf. Morris v. City of Catlettsburg, Ky., 437 S.W.2d 753; Gentry v. Ressnier, Ky., 437 S.W.2d 756. The finding then would have been appropriately reviewable on the issue of

whether the record showed the existence of facts rationally sustaining the finding.

For the reasons indicated, we find the judgment erroneous.

The appellant argues that KRS 99.370(6)(a) 1. means that any resolution by a city legislative body finding that an area is a blighted area must set forth specifically the criteria used in making the finding. In support of this argument the appellant cites Apostle v. City of Seattle, 70 Wash. 2d 59, 422 P.2d 289. We do not reach that question because we confine our holding to the facts of this case. However, we shall note that the fundamental question would seem to be whether the mere inclusion of property in an urban renewal area is in itself such a "taking" as to require that the inclusion be attended by the procedural due processes ordinarily required of *administrative* action.

As a final point, the appellant argues that since it is willing to rehabilitate its own property, and has made plans to do so by erecting a new seven-story office building, it should be allowed to do so, rather than having its property taken into the urban renewal project. Appellant argues that the policy of the urban renewal law is to allow the owner to rehabilitate his own property where he is willing and able to do so. There is such a policy, but only for coordinated redevelopment, according to a use plan, of property that has been taken into a renewal project. The policy is not a basis for excluding property from a project. The argument flies in the face of the holding that a parcel of property may be included in an urban renewal project, and taken by condemnation, even though it by itself is not blighted or substandard. See Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27.

The judgment is reversed with directions for the entry of judgment in conformance with this opinion.

All concur except STEINFELD, J., who did not sit.