Joseph A. Suozzi, J.
The petitioners, Ralph Sorley, an individual taxpayer, and the Smith Pond Civic Association, a taxpayers’ group of Rockville Centre, seek an order compelling the Mayor, Village Clerk and Urban Renewal Director of said village to permit the petitioners to 12********11 inspect, review and make copies of all records pertaining to the urban renewal project *472 The petitioners also seek an order that the Mayor be prohibited from interfering with the said inspection.
The records sought to be inspected by petitioners all relate to urban renewal and, as listed by petitioners, include (1) all minutes of the Board of Trustees; (2) all contracts; (3) all notices of public hearing; (4) all maps; (5) all appraisals; (6) all correspondence; (7) all records of expenditures incurred; and (8) all records of houses in the urban renewal area and the price to be paid for each house.
Petitioners’ counsel asserted that said inspection is desired ‘ ‘ in connection with the interests of the Civic Association whose members make up a large percentage of the persons affected by urban renewal, and by Dr. Sorley as a taxpayer, and in order to prepare for certain litigation involving, inter alia, a conflict of interests of the Mayor”.
Respondents offer limited opposition to the instant application. They take the position that the appraisal information is confidential and part of the records of the Law Department, and is not open for inspection without violating instructions of the Federal agency under which the urban renewal project is being conducted. Except for the appraisal information, respondents do not deny the petitioners’ right to inspect village records. However, respondents admit that they have refused this inspection to petitioner Sorley, but argue that this action was taken because said petitioner’s conduct in the examination of records “ seriously disrupted the normal operation of Village government offices.” It appears that the inspection of all records, except the appraisal information, has at no time been refused to petitioners’ counsel or to any other representative of the petitioning association.
The respondents seek the court’s aid in laying reasonable rules and regulations for any inspection to which the petitioners may be entitled.
Although the court is desirous of accommodating the litigants, the court does not feet that it is in a position, as a practical matter, to prescribe the precise rules and regulations to be followed. It can suggest some general standards to follow, but it is incumbent upon the officer having responsibility and custody of the records involved to spell out such rules and regulations as may be necessary to give to citizens and taxpayers the privilege of inspection, review and copying, without unduly interfering with the conduct of the business of that office. Of course, such rules and regulations will be subject to interpretation and review by the court as to their reasonableness in a proper proceeding.
*473 Such rules and regulations should require that inspection shall be during regular business hours; that no record shall be removed from the custody of the officer involved; that the examination shall proceed in orderly and chronological fashion; that the records sought to be examined shall be specified with such degree of clarity that they may be identified readily; that copies may be made at the expense of the examiner; and that the general business of the office shall not be unduly interfered with. The enumeration of certain regulations is not to be construed as excluding others which are or may be reasonable in content.
As the court observed in the Matter of New York Post Corp. v. Moses (12 A D 2d 243, 256): “ Mere inconvenience resulting from inspection cannot be equated with public detriment, nor be construed as inimical to the public welfare, or against public policy.” From the affidavits submitted with respondents’ papers, it would appear that petitioner Sorley’s conduct in the examination of records prior to August of 1960 had amounted to more than just “mere inconvenience”. The court would hope that any examinations which are made hereafter would not result in the recurrence of situations similar to the ones complained of in respondents’ papers.
The petitioners claim that the items sought to be inspected are “ public records ” and thereby open to inspection by any taxpayer. Inasmuch as the respondents have offered to permit an examination of all the items with the exception of items 5 and 8, to wit, the appraisals and the price to be paid for each house, the court will not pass on the question of whether or not these items are or are not public records. The court does not hold, therefore, that these items are such public records which under section 66 of the Public Officers Law or section 51 of the General Municipal Law would be open to inspection by any taxpayer.
The court will limit itself to the question of whether or not the appraisal and the prices to be paid for each house are such public records which, pursuant to section 66 of the Public Officers Law or section 51 of the General Municipal Law, are open to inspection by any taxpayer.
The court might observe that all records kept by public officers are not “ public records ”. (Blandford v. McClellan, 173 Misc. 15; Natelson v. Portfolio, 291 N. Y. 290.) A study of the cases concerning the inspection of public records and the statutes involved has not shed much light on whether the items under consideration are or are not public records.
*474 Opinion No. 59-862 of the Opinions of the State Comptroller (15 Op. St. Comp., 1959, pp. 377-378) refers to three categories of record:
“ First, there is the document or paper which is unquestionably a public record, either because the statute says it is or because the court thinks it is. As to such, there is a right to inspect, limited only by reasonable rules and regulations set up by the custodian as to the manner in which inspection may be had. [Cases cited.]
“ Second, there is the record which the court concedes is of a public nature but which it is unwilling to open to unlimited inspection by calling it a public record. As to these records, the courts say the right of inspection exists only if the person can show a private interest. [Cases cited.] Examples of records in this category are motor vehicle accident report, reports to the State Tax Commission, certain health records, vital statistics and court and trust fund records.
“ Third, there is the paper or document which the court says is not a public record and as to which there is no right of inspection at all. [Cases cited.] Examples would include police reports, confidential communications and evidence, parole boards records, and certain lists and records not required to be kept but which are kept to facilitate administrative procedures.”
A public record is defined in Corpus Juris Secundum (vol. 76, § 1, p. 112) as follows: “A public record is one required by law to be kept, or necessary to be kept in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done, or a written memorial made by a public officer authorized to perform that function, or a writing filed in a public office.”
Generally, there is no single test that can be applied to determine what are and what are not public records. In the absence of a statute expressly stating that the items sought to be examined are public records, the nature and purpose of the record and possibly custom and usage must be the guides in determining whether a record is a public record. (People v. Harnett, 131 Misc. 75, affd. 224 App. Div. 137, affd. 249 N. Y. 606.)
In the court’s opinion, and the court so holds, the appraisals and the prices to be paid for each house are not(f public records ” within any of the applicable statutes listed above, and are not; subject to the inspection sought by the petitioners.
At best the appraisals are opinions as to value. The court can find no authority to the effect that an opinion, even though in writing, is a public record. These opinions as to value are necessary and preliminary to making an estimate of the cost *475 of acquiring the real estate involved in a particular project. They serve to provide to the buying municipality or agency thereof a guide as to the values of property from which it can determine the price to be paid on negotiation, in lieu of condemnation. The appraisers giving these opinions as to value may or may not be called upon to give these opinions in evidence in condemnation proceedings. To compel a disclosure of the appraisals would be to compel the disclosure of evidence, and would be contrary to good, sound business practice and certainly contrary to the present practice in condemnation proceedings.
An examination of the cases fails to disclose a single instance where an appraisal has been opened pursuant to court order or by statute for inspection by any taxpayer, with or without a private interest in the matter. The appraisals may be looked upon, as they are in some other jurisdictions, as work products and as such are not public records. (State Road Dept. of Fla. v. Cline, 122 So. 2d 827, 828 [Fla.]; State Road Dept. of Fla. v. Shell, 122 So. 2d 215, 218 [Fla.].)
The court would observe that urban renewal is undoubtedly the most enlightened program of blight control and abatement yet to be devised. It is, however, by its very nature, a complex program, replete with red tape and with built-in opposition. To compel a disclosure of the appraisals and the prices to be paid for each house would be to hinder rather than promote this program. No useful or beneficial purpose in the public interest would be served.
The property owners are not being deprived of any rights or remedies which they presently have because they do not have the village’s opinion of value. They are free, as are the petitioners, to obtain from their own appraisers opinions as to the value of the properties. No property owner is compelled to accept the offer made by the village. The remedy of having the price fixed in a condemnation proceeding is, in any event, available if a price cannot be agreed upon.
Accordingly, petitioners’ application for permission to inspect, review and make copies of the minutes of the Board of Trustees, all contracts, all notices of public hearing, all maps, all correspondence, and all records of expenditures incurred, as they relate to urban renewal, is granted. This permission is subject to reasonable regulations to be prescribed by the officer having custody of the foregoing items. Respondents are hereby directed to prescribe the reasonable regulations for an inspection by any taxpayer of such of these items as are in their custody, within five days of the date of the short-form order filed simultaneously herewith. The application with respect to *476 appraisals and the price to he paid for each house is denied. That part of the application which seeks to prohibit the Mayor from interfering with the inspection is also denied, as there is no basis for such an order.