Isidore Bollinger, J.
This is an article 78 proceeding in the nature of mandamus whereby petitioner, Francis X. Smith, individually and as President of the City Council of the City of New York, seeks judgment prohibiting the respondents from continuing to suppress the Master Plan of the City of New York and ordering the respondents to immediately deliver a copy of the Master Plan to the petitioner. Respondents Donald H. Elliott, individually and as Chairman of the New York City Planning Commission, and John V. Lindsay, individually and as Mayor of the City of New York, in effect *164 contend that no copy of the Master Plan or a proposal for said plan is now in existence.
Petitioner bases his right to relief upon sections 1113 and 1114 of the City Charter. Section 1113 provides: ‘1 The heads of all administrations and departments, except the police and law departments, and the chiefs of each and every division or bureau thereof and all borough presidents, shall with reasonable promptness, furnish to any taxpayer desiring the same, a true and certified copy of any booh, account or paper kept by such administration, department, bureau or officer, or such part thereof as may be demanded, upon payment in advance of ten cents for every hundred words thereof by the person demanding the same. The provisions of this section shall not apply to any papers prepared by or for the comptroller for use in any proceeding to adjust or pay a claim against the city or any agency or by or for counsel for use in actions or proceedings to which the city, or any agency is a party or for use in any investigation authorized by this charter ” (emphasis supplied). Section 1114 of the City Charter states: ‘ ‘ All books, accounts and papers in the office of any borough president or any division or bureau thereof, or in any city administration or department or any division or bureau thereof, except the police and law department, shall at all times be open to the inspection of any taxpayer, subject to such reasonable rules and regulations in regard to the time and manner of such inspection as the borough president, administration, department, office, division or bureau may make; in case such inspection shall be refused, such taxpayer, on his sworn petition, describing the particular book, account or paper that he desires to inspect, may, upon notice of not less than one day, apply to any justice of the supreme court for an order that he be allowed to make such inspection as such justice shall by his order authorize. The provisions of this section shall not apply to any papers prepared by or for the comptroller for use in any proceeding to adjust or pay a claim against the city or any agency or by or for counsel for use in actions or proceedings to which the city or any agency is a party for use in any investigation authorized by this charter.”
Initially, the court notes that the Master Plan proposal sought herein does not appear to come within the exception delineated in the aforesaid sections of the City Charter. One guideline that may be utilized by the court in determining what document, book, account or paper comes within the purview of sections 1113 and 1114 of the City Charter is the presence of public concern. In Sheridan v. Crisona (14 N Y 2d 18) the New York *165 Court of Appeals held a report made by the President of the Borough of Queens which was highly critical of an appraiser in a certain condemnation proceeding to be a matter of public concern, and as such, it was required to be made available to the public as a document kept in the office of said President (see, also, Lombardo v. Stoke, 18 N Y 2d 394, 399).
The provisions of the City Charter (§ 197) with respect to the Master Plan provide in pertinent part that the “ city planning commission shall prepare and adopt, in one or more parts, and from time to time modify a master plan ’ that “ before adopting the master plan or any part or modification thereof, the commission shall hold a public hearing or hearings thereon ’ ’, and that said plan ‘ ‘ shall be on file in the office of the department of city planning ” and “upon the adoption of any modification of or in addition to the master plan, it shall be published in the City Record ” (emphasis supplied). Clearly then the object envisioned by these statutory provisions pertaining to the Master Plan is the dissemination of the proposed plan or any part thereof to the public. Any other interpretation detrimental to an informed public in a democratic society would render the requirement of public hearings meaningless and in effect would frustrate the statutory intent.
It is argued that the proposed master plan or any part thereof is not, as it presently exists, a “ public record ”. What then is a public record? Opinion 59-862 of the Opinions of the State Comptroller (15 Op. St. Comp., 1959, pp. 377-378) in referring to three categories of records states inter alia: ‘1 First, there is the document or paper which is unquestionably a public record, either because the statute says it is or because the court thinks it is. As to such, there is a right to inspect, limited only by reasonable rules and regulations set up by the custodian as to the manner in which inspection may be had ” (see Matter of Sorley v. Lister, 33 Misc 2d 471, 474). It would be cavalier of respondents or this court to contemplate the proposed master plan or any part thereof as not imbued with the most vital public concern and interest. The reality of the present urban crisis reinforces this conclusion. For this reason and in light of the statutory procedure mandated for adoption of the Master Plan or any part thereof, this court concludes that said proposed plan is a “public record” by virtue of its nature and purpose.
The court is mindful, however, of another guideline to be utilized in determining what lies within the purview of sections 1113 and 1114 of the City Charter, namely, the concept of finalization (see Matter of Sorley v. Clerk, et al. of Inc. Vil. of *166 Rockville Centre, 30 A D 2d 822). Prior to the “ completion ” of the proposed plan or of any part thereof viable as an integrated unit, application under sections 1113 and 1114 would appear to be premature. The alternative to this approach would, it appears, constitute an unwarranted interference with the orderly and reasonable process of formulating a proposed Master Plan or part thereof. Governmental administrative agencies should, in general, barring special circumstances, he free in the initial stages of formulating proposals from undue interference and pressure. The delicate balancing of public concern and the public interest with proper and orderly administrative process requires a case by case application of meaningful guidelines and appropriate legal and equitable concepts.
The terms ‘1 complete ’ ’ and ‘ ‘ finalized ’ ’ are not always subject to facile application. They are essentially words of art. Respondents contend that there is presently no final proposed Master Plan and no final part thereof in the sense of an integral unit. The court does not agree. Respondents’ own papers submitted in opposition to this application admit that11 preparatory work on the Comprehensive Plan commenced in 1964 under the previous City Administration. In 1966 the project reached the stage of applying city-wide concepts and principles to the many diverse communities in the five boroughs and the main drafting work began. By October of 1968 I (Donald H. Elliott, Chairman of the New York City Planning Commission and Director of the Department of City Planning) was able to report to HUD that the Commission had approved a draft of the Comprehensive Plan in principle for publication ”. Further it is admitted that the text of Book I of said plan is complete except for the addition of certain nontextual materials and that the text of Books II through VI is complete except for the incorporation of some manuscript revision and non-textual materials. In this context the court takes judicial notice of an announcement of the Regional Plan Association to the effect that, in cosponsorship with the Metropolitan Regional Council, it will host the New York City Planning Commission’s presentation of “ The First Comprehensive Plan for New York City and Public Discussion By Conference Participants ” on November 18, 1969. It therefore appears that the proposed Master Plan and most certainly integral parts thereof are in a finalized state available for public perusal and inspection within the ambit of sections 1113 and 1114 of the City Charter. Respondents’ strained rationale of possible *167 continued revision and editorializing of said plan and any of the parts thereof does not compel this court to reach a contrary conclusion in light of respondents’ own admissions and the apparent imminent dissemination of the proposed plan.
This court would be remiss if it disregarded the undeniable public concern and interest vested in the proposed Master Plan and any part thereof by a tortured construction of the concept of finalization which would in effect negate that public concern.
¡Respondents allege that they have agreed to supply petitioner with a copy of the Master Plan when available. At the least it appears that the- text of the proposed plan and, in particular, that of Book I is complete. No sufficient reason has been advanced to deny relief to the petitioner on the basis of unavailability with respect to those parts of the proposed plan as enumerated. In fact, it appears that the New York Times, in an article which appeared in its issue of February 3, 1969 in regard to the plan, acknowledged its obtaining of a copy of the original draft of said plan as approved by the City Planning Commission. The court takes cognizance of this statement by the New York Times in the context of the vital public concern inherent in the proposed plan.
/No disorder or confusion in public affairs will result from the granting of the relief requested by petitioner under the circumstances herein as regards those parts of the proposed plan which have clearly been adequately finalized, to wit, the textual content of said plan. Petitioner has demonstrated a clear legal right to the relief requested in respect of the aforesaid. Accordingly the application is granted in accordance with the above.