[No. 184-41095-2. Division Two. November 24, 1970.]

NORRIS EDWARDS et al., *Appellants,* v. THE CITY COUNCIL OF THE CITY OF SEATTLE et al., *Respondents.*

*Schweppe, Doolittle, Krug & Tausend, Robert R. Beezer,*
and *David G. Knibb,* for appellants.

*A. L. Newbould* and *Gordon F. Crandall,* for respondents.

PEARSON, J.—This is an appeal from a decision of the
Superior Court for King County upholding the action of the
Seattle City Council in declaring (by ordinance) Seattle's
Yesler-Atlantic area a blighted area and subject to urban
renewal development under RCW 35.81.010 *et seq.* The fac-
tual setting of this controversy is relatively simple. The
legal questions raised are somewhat complex, however.
Thus, we propose to discuss the legal issues serially, and to
note any pertinent facts, together with that discussion.

I

The first question raised is whether the proceeding here
is a quasi-legislative or quasi-judicial administrative hear-
ing.

Resolution of this question has been greatly sim-
plified by the Supreme Court's decision in *Apostle v. Seat-*

*tle,* 77 Wn.2d 59, 459 P.2d 792 (1969). In that case it was decided that hearings under the Urban Renewal Law (RCW 35.81) are of a quasi-legislative nature and so not subject to the stringent procedural and substantive guarantees required in quasi-judicial hearings. The distinction between quasi-legislative and quasi-judicial proceedings is in the type of facts to be found. The quasi-judicial hearing is pointed toward determination of a set of facts which will provide the basis for legal resolution of a dispute between particular parties. The quasi-legislative hearing aims rather at facts to aid in resolution of a more wide-range (area) type of problem, involving a prospective decision on a matter of broader group, as opposed to single litigant, interest. *Compare Londoner v. Denver,* 210 U.S. 373, 52 L. Ed. 1103, 28 S. Ct. 708 (1903) *with Bi-Metallic Inv. Co. v. State Bd. of Equalization,* 239 U.S. 441, 60 L. Ed. 372, 36 S. Ct. 141 (1915). *See* K. Davis, Administrative Law Treatise § 7.04 (1958). It seems to us that an urban renewal hearing, which involves decisions on a whole area's future development, will result in a legislative type of determination. If everyone interested in such a proceeding were given the full right to cross-examination and the other rights required in a judicial hearing, the process would fall of its own weight. Some concession to the shortness of life and the volume of public problems must be made if effective legislation for the entire community's needs is to be forthcoming.

## II

Is the notice required by RCW 35.81.060(3) sufficient as a matter of due process?

This point need not detain us long, since the provision has three times been considered by the Supreme Court and has been upheld each time. *Miller v. Tacoma,* 61 Wn.2d 374, 378 P.2d 464 (1963); *Apostle v. Seattle,* 70 Wn.2d 59, 422 P.2d 289 (1966); *Apostle v. Seattle,* 77 Wn.2d 59 459 P.2d 792 (1969).

## III

Is the Washington Administrative Procedure Act (RCW 34.04) applicable to this hearing on an urban renewal plan?

 This question is somewhat more difficult than those preceding it, since it has not yet been specifically determined by the Supreme Court. Certain statements in the cases, as well as various other arguments, convince us that the WAPA does not apply in this particular proceeding.

 In *Miller v. Tacoma, supra,* the court noted that the nature and extent of blight were peculiarly factual determinations. The local authorities, working under general legislative guidelines, must almost necessarily be charged with final determination of the fact of blight, absent some arbitrary use of such power. The second *Apostle* case, *supra,* clarified the statements in *Miller.* The absence of procedural guidelines for an urban renewal hearing was there found to be not fatal to the statute in the face of the due process clause. This is true because the urban renewal hearing takes no property from anyone. The hearing, if it results in a finding of blight, is no more than a step, a condition precedent to beginning land acquisitions. It is still within the individual property owner's discretion to force the municipal government to attempt to exercise its power of eminent domain after blight has been found. The second *Apostle* case and a case cited therein, *Zurn v. Chicago,* 389 Ill. 114, 59 N.E.2d 18 (1945), point out that the court in a condemnation action by an urban renewal authority is not foreclosed on any issue by findings of the authority. The property owner may thus litigate the issues upon which he is constitutionally guaranteed a hearing. These include public use and necessity (blight) and compensation. *See generally, Berman v. Parker,* 348 U.S. 26, 99 L. Ed. 27, 75 S. Ct. 98 (1954). This right to judicial hearing is one reason why there is a somewhat lesser need to provide rigid procedural limits on the legislative hearing in an urban renewal context.

 A second argument that leads us to conclude that the WAPA does not apply here is that the statute, by its

own terms, applies to state agencies. RCW 34.04.010(1). We think that for the purpose of urban renewal, the Seattle City Council is not such a state agency. While it is true that for some purposes the city may be an agency of the state, *State v. Board of Valuation*, 72 Wn.2d 66, 431 P.2d 715 (1967), the test to determine this relationship is a functional one. Here the City of Seattle, through its city council, acted on a matter of local nature. In urban renewal matters, the municipality is limited to acting within its own bounds. *See* RCW 35.81.050. It has no statewide authority and performs no statewide, as opposed to local, function. We think that under these circumstances, the city council is not an agency covered by the WAPA (RCW 34.04). *See Berggren v. Moore*, 61 Cal. 2d 347, 392 P.2d 522, 38 Cal. Rptr. 722 (1964).

## IV

Was the manner of conducting the hearing or the notice thereof, defective?

■ Appellants suggest, without citation of authority, that they were deprived of a fair hearing by failure of the city council to grant a 60-day continuance of the hearing. CR 40(d) and (e) provide that trial courts have discretion to grant continuances for good cause shown. Surely a legislative body should be held to no higher standard than this, particularly in view of the less rigid standards applied to legislative hearings as discussed above. We certainly can see nothing in this record to indicate an abuse of discretion. The city's legislative body must be given freedom to be about its business, absent a showing of arbitrary disregard for the rights of citizens who have shown good cause for continuing business.

■ Appellants also question whether proper standards were used to determine blight and whether the city acted properly in failing to disclose the individual property evaluation and appraisal forms. The second *Apostle* case, *supra* points out that the criteria for determination of blight need not be the same as those used in the building

codes of the city. There is no indication in this case that the same criteria were not applied to all buildings within the area. Blight is not necessarily the same sort of thing as code violation. Perhaps many violations of building codes are an indication of blight. However, determination of blight, as discussed above, is a matter for the local government to determine. Even under the test of "clearly erroneous in view of the entire record" used to review administrative findings under RCW 34.04, *Ancheta v. Daly,* 77 Wn.2d 255, 461 P.2d 531 (1969), we cannot say that the standards used by the city were not ones properly designed to ascertain the existence of blight. These criteria seem to us clearly not arbitrary. The city would appear to have clear interests in refusing to disclose individual appraisals, among them the need to negotiate for purchase of the land if it is found blighted. *See Sorley v. Lister,* 33 Misc. 2d 471, 218 N.Y.S.2d 215 (1961). Here the appellants were provided with block summaries of defects and with the standards used for determination of blight. We cannot say this information was anything less than sufficient to prepare for the hearing. *See Miller v. Tacoma, supra.* We need not decide whether some city behavior might have been impolitic; it was clearly legally sufficient.

## V

Was the finding of blight supported by adequate evidence?

Even using a test more severe than that required here, we cannot say that the city council determination was clearly erroneous on the whole record. (*See Ancheta v. Daly, supra,* interpreting the WAPA, which, of course, does not apply here.) Clearly, if this test is met, the substantial evidence test can be met. This is the test now applied in urban renewal cases and its confines have been well mapped in the two *Apostle* cases. Here the city council conducted a 5-day hearing and heard testimony from both sides on the issue. Extensive exhibits and maps as well as an oral presentation by the urban renewal department

were made. Appellants vigorously contested some statements and conclusions of these witnesses. On the basis of this evidence, the city council acted to pass an ordinance[1] which made detailed findings to support a conclusion of blight. These findings, when tested against the second *Apostle* opinion, *supra,* must be found sufficient.

## VI

The final issue to be resolved is whether or not the notice of the hearing provided was sufficiently in conformity with the statute.

RCW 35.81.060 (3) requires that notices of public hearings must appear in a newspaper of general circulation in the urban renewal area and that notices must be mailed to persons listed on the county treasurer's rolls as tax paying property owners within the area.

In this case, the newspaper used to publish the required notices was the Daily Journal of Commerce, Seattle's official newspaper. The evidence indicates this newspaper had little, if any, circulation within the urban renewal area. Two lines of argument convince us that this publication was not fatally defective.

First, we look to the purpose of the requirement. The statute seems clearly designed to afford the people affected by an urban renewal project protection from a hearing convened at an unexpected hour in an unexpected place. The hearing is to be just that—an opportunity for the community to present their views to the persons charged with decision-making. In this case, the record shows that notices were mailed to property owners of record and an urban renewal newsletter, which circulated widely in the area, carried notices of the hearings. On the appointed day, property owners, represented by counsel, were present. During the entire hearing, appellants and their counsel presented their views to the city council. We think that the purpose of the statute was achieved.

[1]Ordinance 96123, as amended by ordinance 96635.

Second, two old cases suggest that perhaps the Daily Journal of Commerce qualifies as a newspaper of general circulation. *See Puget Sound Publishing Co. v. Times Printing Co.,* 33 Wash. 551, 74 P. 802 (1903); *King County v. Superior Court,* 199 Wash. 591, 92 P.2d 694 (1939). We should be reluctant to hold that these two cases require us to find the Daily Journal of Commerce to be a newspaper of general circulation. By the same token, we would be reluctant to find that the notice published by the city was itself adequate. However, when we look at the means used and at the end result, we conclude that the statute was substantially complied with. We cannot condone without comment this action of the city, but we cannot say that it resulted in the harm the statute seeks to avoid in this case. The people were well enough informed to be able to come and present their case to the city council. Such substantial compliance with the intent of the statute is sufficient, we think.

This case, and the project behind it, have well demonstrated the depth of feeling surrounding the Yesler-Atlantic project. Able counsel on both sides have greatly aided our decision. While the political considerations back of the decisions appealed from may not all have been made with the greatest of wisdom, we must find that they were taken in an atmosphere and following a procedure that was legally sufficient.

Affirmed.

ARMSTRONG, C. J., and PETRIE, J., concur.

Petition for rehearing denied January 8, 1971.

Review denied by Supreme Court February 23, 1971.