305 A.2d 93.

CITY OF PROVIDENCE *vs.* LOCAL 799, INTERNATIONAL
ASSOCIATION OF FIREFIGHTERS, AFL-CIO *et al.*

JUNE 7, 1973.

PRESENT: Roberts, C. J., Paolino, Kelleher and Doris, JJ.

KELLEHER, J. Sometime in early 1972, negotiations between the city of Providence and the union representing the city's fire fighters for a collective bargaining agreement which would cover the fiscal year beginning July 1, 1972 reached an impasse. The union requested arbitration pursuant to the pertinent provisions of the Fire Fighters' Arbitration Act. General Laws 1956 (1968 Reenactment) ch. 9.1 of title 28. The union appointed its arbitrator. The city responded by nominating its arbitrator. When the arbitrators failed to select a third arbitrator, the union petitioned the Chief Justice of this court to appoint the third member of the arbitration board. The Chief Justice, acting pursuant to §28-9.1-8, selected John J. Hall as the third arbitrator and chairman of the board. 110 R. I. 905-06, 290 A.2d 416 (1972).

The city and the union agreed to waive all the time limitations contained in the Act. The arbitration board held hearings in May and early June, 1972. On July 14, 1972, a majority of the board (its chairman and the firemen's arbitrator) filed a written report in which they denied the union's requests for increased clothing allowances, better pensions, a fixed minimum number of men per shift, hearings before suspensions could take effect, and relief from conducting searches for bombs because of a bomb threat; but approved salary increases, increased vacations, an addi-

tional paid holiday, premium pay for overtime and improved Blue Cross and Physicians Service benefits.

Within two weeks of the publication of the board's findings, the city launched a two-pronged attack which seeks to invalidate the award. The city filed a civil complaint in the Superior Court in which it sought a declaratory judgment that the board's action was null and void. It also filed with us a petition for certiorari. The certiorari proceeding's goal is identical to that of the Superior Court litigation. A justice of the Superior Court granted the union's motion to dismiss the declaratory judgment action. The city has appealed. The reasons given by the city in support of its appeal and its petition for certiorari are imaginative, ingenious, and innovative but hardly persuasive. We shall first discuss the issues raised in the declaratory judgment action and then go on to the questions presented by the certiorari petition.

I

In its declaratory judgment complaint, the city alleges that the board's award is void because of a failure to comply with various portions of the Administrative Procedures Act (APA), G. L. 1956 (1969 Reenactment) ch. 35 of title 42. This proposition assumes that an arbitration panel established pursuant to the Fire Fighters' Arbitration Act is an agency which must follow the mandates of the APA. Section 42-35-1(a) defines such an agency as any "* * * state board, commission, department, or officer, other than the legislature or the courts, authorized by law to make rules or to determine contested cases." The city emphasizes that within recent times we have ruled that the three individuals who are appointed to serve as arbitrators under the pertinent provisions of ch. 9.1 of title 28 are public officers and that collectively the trio constitutes a public board or agency. *City of Warwick* v. *Warwick Regular Firemen's Ass'n,* 106 R. I. 109, 256 A.2d 206 (1969). While we have

described the arbitration board as a public agency, the crucial issue before us is whether the board is a state agency. If it is, then the city's position must be sustained.

When arbitration is required, the board acts on a matter of local concern. It has no statewide authority and performs no statewide function. The expenses of arbitration are shared by the municipality and the union. No state funds are appropriated to pay the arbitrators. While it is a public agency, the arbitration board whose report is before us is not a state agency within the context of the APA. Consequently, it was not bound by the APA's provisions. See *Edwards* v. *City Council*, 3 Wash. App. 665, 479 P.2d 120 (1970).

In 1968, the General Assembly amended the Fire Fighters' Act so that the decision of a majority of the arbitrators would be binding on both the municipality and the fire fighters' bargaining agent. This action made it clear that any award would be immune from judicial scrutiny either by way of any statutory appeal or by the use of such remedies as the Declaratory Judgment Act.

The trial justice's dismissal of the city's complaint was correct.

## II

The mere fact that the Fire Fighters' Arbitration Act provides no recourse to the courts does not mean that the arbitrators' action can go unchallenged. This legislative omission cannot divest this court of its power to review decisions of subordinate tribunals by way of the discretionary common-law writ of certiorari. *Hester* v. *Timothy*, 108 R. I. 376, 275 A.2d 637 (1971); *Smith* v. *Estate of Catterall*, 107 R. I. 729, 271 A.2d 300 (1970). Although the primary purpose of the writ is its use by us to insure that subordinate tribunals do not act beyond the limits of their jurisdiction, the function of the writ has been extended so that it is presently used in the exercise of this court's revisory

and appellate jurisdiction to review a tribunal's alleged abuse of its jurisdiction. *Shiller & Schwerin* v. *Gemma,* 106 R. I. 163, 256 A.2d 487 (1969); *In re Little,* 103 R. I. 301, 237 A.2d 325 (1968).

In *City of Warwick, supra,* we rejected the argument that the compulsory binding arbitration features of the Fire Fighters' Arbitration Act amounted to an unconstitutional delegation of legislative power. We also emphasized that standards delineated in the Act not only properly directed and limited the arbitrators' authority but also formed an adequate basis for judicial review.

The city's charge that the arbitrators disregarded the Act's guidelines raises the issue of whether the arbitration board acted within its jurisdiction. Such an issue can be examined by certiorari.

Originally, the city objected to the findings made by the board on the issue of overtime pay, vacations, an additional paid holiday, salary, and improved hospitalization and medical benefits. At oral argument, counsel for both the city and the union informed us that agreement had been reached on all these matters with the exception of overtime pay. We will, therefore, limit our discussion to the arbitrators' award of time-and-a-half pay for each hour of overtime work.[1]

Section 28-9.1-10 sets forth the standards[2] that the arbitrators must follow in deciding the substantive terms of a new collective bargaining agreement. This section allows the arbitrators to compare the prevailing wages and working conditions in the bargaining unit's fire department with those enjoyed by either the skilled workers in the building

---

[1] In allowing this increase the arbitrators reduced the guarantee given a fire fighter who is called back to duty. The 1971-72 agreement called for a guaranteed minimum of four hours' pay for each call back. The new agreement reduces the guarantee to two hours.

[2] See appendix.

trades, or by workers who do similar work as fire fighters and who exhibit similar skills under similar working conditions provided that the building-trade workers or the other so-called similarly skilled workers are employed in the "local operating area involved." The statute also permits the arbitrators to ignore the geographical limitations of the "local operating area" and match the lot of the fire fighters in the bargaining unit with those employed by "fire departments in cities or towns of comparable size."

The city points out that in making the overtime award, the arbitrators compared conditions in the Providence Fire Department with those found in fire departments operated by other Rhode Island cities. It then argues that since Providence is by far the most populated municipality in the state,[3] the comparison was not made with a comparably-sized municipality and must fall.

However, the Legislature had in mind an "incomparable" fire department when it authorized an examination of pay and working conditions of similarly skilled employees doing "the same or similar work" under the "same similar working conditions." This standard, in our opinion, permits a comparison between benefits paid to members of a fire department of a large municipality with those paid to the fire fighters of a not so large municipality.

We will not equate the phrase "in the local operating area involved" as being territorially coterminous with the geographical boundaries of the municipality involved in the collective bargaining process. Accordingly, we take a metropolitan or regional view of a fire department's operational area. The pertinent exhibit shows time-and-a-half for over-

---

[3]The city's position assumes the statutory requirement of "comparable size" speaks only of population—not geography. One of the exhibits describes Providence as being 18.9 square miles in area. There are several cities and towns whose area exceeds that of Providence. Cranston covers 28.2 square miles while Warwick covers 36.2 square miles.

time being paid by the cities of Cranston, East Providence, Newport and Woonsocket. Cranston and East Providence are Providence's next-door neighbors. The fire fighters employed by these two municipalities perform their duties in the Providence operating area. Their overtime pay provided a sufficient basis for the action taken by the arbitrators.

Support for our regional view of the statute can be found in the fact that various mutual aid compacts permit the men and equipment of one municipality's fire department to assist and implement the efforts of another department. This court is well aware that within the past few months the Providence fire fighters were sent into Cranston to provide fire protection while that city's department was extinguishing a serious conflagration at the Adult Correctional Institutions. It is common knowledge that during the July 4th bonfire season communities adjacent to Providence dispatch personnel and equipment to the various fire stations located within the capital city.

The petition for certiorari is denied and dismissed. The writ previously issued is quashed.

Mr. Justice Joslin did not participate.

### APPENDIX

"28-9.1-10. Factors to be considered by arbitration board.—The arbitrators shall conduct the hearings and render their decision upon the basis of a prompt, peaceful and just settlement of wage or hour disputes between the fire fighters and the city or town by which they are employed. The factors, among others, to be given weight by the arbitrators in arriving at a decision shall include:

"(a) Comparison of wage rates or hourly conditions of employment of the fire department in question with prevailing wage rates or hourly conditions of employment of skilled employees of the building trades and industry in the local operating area involved.

"(b) Comparison of wage rates or hourly conditions

of employment of the fire department in question with wage rates or hourly conditions of employment maintained for the same or similar work of employees exhibiting like or similar skills under the same or similar working conditions in the local operating area involved.

"(c) Comparison of wage rates or hourly conditions of employment of the fire department in question with wage rates or hourly conditions of employment of fire departments in cities or towns of comparable size.

"(d) Interest and welfare of the public.

"(e) Comparison of peculiarities of employment in regard to other trades or professions, specifically:

    (1) Hazards of employment.

    (2) Physical qualifications.

    (3) Educational qualifications.

    (4) Mental qualifications.

    (5) Job training and skills."

*Robert J. McOsker*, City Solicitor, *Vincent J. Piccirilli*, Asst. City Solicitor, for appellant.

*Hawkins & Hoopis, John P. Hawkins, Harry J. Hoopis*, for appellees.