IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CONFEDERATED TRIBES AND BANDS OF THE YAKAMA NATION, | ) ) ) | No. 36334-1-III |
| Respondents, | ) ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| YAKIMA COUNTY; GRANITE NORTHWEST, INC.; FRANK ROWLEY; and ROWLEY FAMILY TRUST, | ) ) ) ) ) ) | |
| Petitioners. | ) | |

FEARING, J. — Petitioners Granite Northwest and Yakima County appeal the superior court's ruling that adjudged Yakama Nation to have filed a LUPA petition timely. Because Yakama Nation challenges a quasi-judicial decision of the Yakima County Board of County Commissioners and because the adoption of a resolution by the board started the limitation period for filing the petition, we agree with petitioners and reverse the superior court's decision.

No. 36334-1-III
*Confederated Tribes and Bands of the Yakama Nation v. Yakima County*

FACTS

Granite Northwest, Inc. operates a mine in Yakima County. On April 10, 2015 Granite Northwest submitted a request to Yakima County for a conditional use permit to expand its mining operation and filed an accompanying State Environmental Policy Act (SEPA) checklist for a type-II mining site.

The Confederate Tribes and Bands of the Yakama Nation (Yakama Nation) opposed the issuance of the permit. Yakama Nation alleged that the mining expansion would lie within its burial grounds and the expansion would negatively impact its ancestral and cultural resources. During the next two years, Yakama Nation and Yakima County addressed the Nation's concerns pertaining to the county's possible issuance of a conditional use permit and the corresponding SEPA determination.

On April 7, 2017, Yakima County issued Granite Northwest a conditional use permit with twenty-seven conditions. The conditions included a requirement to obtain permits from the Washington State Department of Ecology, the Department of Natural Resources, and the Department of Archaeology & Historic Preservation and to comply with all mitigation measures outlined in the county's mitigated determination of non-Significance (MDNS) under SEPA.

Also on April 7, 2017, Yakima County issued the MDNS. The mitigation measures under the determination included a condition that Granite Northwest will immediately cease work if it uncovers unanticipated archaeological or historic resources

2

or human remains and will notify Yakima County, the Washington State Department of Archaeology and Historic Preservation, and the Washington State Department of Natural Resources of its discovery. According to the MDNS, Yakima County reviewed the SEPA checklist along with other submitted materials and decided no Environmental Impact Statement (EIS) was required because the expanded mining would likely not pose a significant adverse impact to the environment as long as Granite Northwest fulfilled the specified measures to mitigate the potential harmful effects. Yakima County advised parties the final MDNS threshold determination was issued pursuant to WAC 197-11-340(2) and the SEPA threshold determination could be appealed to Yakima County Superior Court within twenty-one days.

Yakima County Code (YCC) 16B.09 required challenges to Yakima County's issuances of conditional use permits to be administratively appealed to a hearing examiner. The hearing examiner's final decision could be appealed to the Yakima County Board of County Commissioners. At that time, YCC 16B.09 did not allow for an administrative appeal for a SEPA/MDNS decision. Rather, a challenger would appeal a SEPA/MDNS decision to superior court. The former Yakima County code thus bifurcated the conditional use permit decisions from the SEPA determination even though both appeals might contain overlapping issues.

Yakima County informed the parties, in a letter approving the conditional use permit, that a party could administratively appeal issuance of the permit to the Yakima County hearing examiner by April 21, 2017 pursuant to section 16B.09 of the Yakima County Code. The letter further advised that the county code did not afford an administrative appeal for the SEPA determination, but a party could appeal the SEPA determination to Yakima County Superior Court within 21 days. Yakima County also advised parties in its MDNS letter that a party could appeal the county's SEPA threshold determination to Yakima County Superior Court within 21 days.

On April 21, 2017, Yakama Nation timely filed an administrative appeal, with the hearing examiner, of Yakima County's issuance of the conditional use permit to Granite Northwest. On April 28, 2017, Yakama Nation filed a land use petition in Yakima County Superior Court against Yakima County and Granite Northwest, which petition challenged the MDNS determination.

Yakama Nation notified Yakima County that bifurcation of the appeals process placed Yakama Nation in a dilemma. Yakama Nation needed to choose between filing a lawsuit challenging SEPA decisions before exhausting administrative remedies for the issuance of the conditional use permit or exhaust administrative remedies and fail to meet the filing deadline under SEPA. Yakama Nation argued Yakima County's appeals process violated RCW 43.21C.075(2)(a) and Washington law because the county's process bifurcated the appeal process and thereby forced an absurd result. In recognition

of this anomaly, the Yakima County Superior Court, on May 12, 2017, stayed the pending Land Use Petition Act (LUPA) action until Yakama Nation exhausted its administrative remedies for Yakima County's land use decision.

The Yakima County hearing examiner conducted an open record hearing. Thereafter, on January 29, 2018, the hearing examiner issued its decision. The hearing examiner ruled that it held subject matter jurisdiction to resolve substantive SEPA mitigation measure issues. The hearing examiner, however, ruled that it lacked subject matter jurisdiction over Yakima County's decision rejecting the need to prepare an EIS. The hearing examiner concluded that the procedural SEPA threshold determination is reserved for the superior court. The hearing examiner affirmed Yakima County's issuance of the conditional use permit and the county's SEPA/MDNS decision related to the permit. On February 13, 2018, Yakama Nation appealed the hearing examiner's decision to the Yakima County Board of County Commissioners and requested a closed record hearing.

On March 14, 2018, Yakima County Public Services employee Tommy Carroll e-mailed Granite Northwest and Yakama Nation to inform them that the Yakima County Board of County Commissioners had reviewed the papers filed with the hearing examiner and wished to schedule a public meeting to decide whether the board will affirm the hearing examiner's decision or conduct a closed record public hearing pursuant to YCC 16B.09.055(3). On April 10, 2018, at a public meeting, the board of county

commissioners adopted Resolution 131-2018, which read that the board received an

administrative closed record appeal from Yakama Nation, reviewed the hearing

examiner's open record appeal hearing and transcripts, affirmed the hearing examiner's

decision, and denied Yakama Nation's appeal. The resolution read, in part:

> **WHEREAS,** SEP2015-00016 was appealed to Superior Court by the Yakama Nation and the [Selah Moxee Irrigation District]. All parties agreed to stay the Superior Court proceedings filed under the Land Use Petition Act (LUPA) relative to the SEPA MDNS threshold determination appeal until the conclusion of the administrative appeal; and
> . . . .
> **WHEREAS**, The Hearing Examiner issued his decision affirming the Granite Mining Site/Operation Expansion Final Conditional Use Permit Decision with language clarifications set forth in Section IV of his Decision and affirms the SEPA Final Mitigated Determination of Non-Significance related to said Conditional Use Permit which were both issued on April 7, 2017 and were designated as File Numbers PRJ2014-00216, CUP2015-00037 and SEP2015-00016; and
> **WHEREAS**, Yakima County received an administrative closed record appeal from the Yakama Nation on February 13, 2018, in accordance with Yakima County Code 16B.09; and
> **WHEREAS**, the record of the open record appeal hearing and transcripts were provided to the Board of County Commissioners (BOCC) for review in accordance with Yakima County Code 16B.09.055; and
> **WHEREAS**, at a public meeting with the BOCC on April 10, 2018, the BOCC decided to affirm the Hearing Examiner's decision in accordance with Yakima County Code 16B.09.055(3); and
> **NOW, THEREFORE**, the Decision of the Hearing Examiner in APL2017-00003 is affirmed. The appeal of the Yakama Nation (under APL2018-00001) is denied.
> **DONE** this 10th Day of April, 2018.

Clerk's Papers (CP) at 253-54.

On April 13, 2018, Yakima County Senior Project Planner Noelle Madera sent

Yakama Nation an e-mail along with a letter she wrote and the Board's resolution. The

remarks in the letter pertinent to this appeal are:

> Re: APL2018-00001: *Notice of Affirmation of Hearing Examiner's Decision*.
> . . . .
> On April 10, 2018, the Board of County Commissioner's (BOCC) *held* a public meeting in regards to your appeal (APL2018-00001) to decide whether to affirm the Hearing Examiner's decision or hold a closed record hearing. The BOCC unanimously *decided* to affirm the Hearing Examiner's decision and *signed* Resolution 131-2018, which is attached for your records. YCC 16B.09.050(1)(a) requires written notification of this decision. *At this point,* all administrative appeals have been exhausted.

CP at 252 (emphasis added).

## PROCEDURE

On May 2, 2018, twenty-two days after passage of the April 10 Yakima County

Board of County Commissioners resolution and nineteen days after Noelle Madera's

April 13 letter, Yakama Nation served the parties and filed in Yakima Superior Court a

new land use petition to appeal the board's final decision. This second LUPA action is

the subject of this appeal.

Granite Northwest moved to dismiss the 2018 LUPA petition on the ground that

Yakama Nation did not timely file that action under RCW 36.70C.040(4)(b). Granite

Northwest argued that the court lacked jurisdiction to hear an untimely LUPA petition

because the 21-day LUPA statute of limitations began to run on April 10, 2018, which is

7

the date the resolution passed and Yakama Nation filed its LUPA petition one day after the limitation period expired. According to Granite Northwest, the April 10, 2018 board of county commissioners' resolution, not the April 13, 2018 letter from the Yakima County planner, constituted the written decision for purposes of commencing the time to file a LUPA action. Granite Northwest also moved to dismiss the previously stayed 2017 LUPA action on the theory that the superior court stayed the action on the condition that Yakama Nation timely filed its administrative appeal to Yakima County's conditional use permit land use decision.

In response to the motion to dismiss the two actions, Yakama Nation argued that the Yakima County Board of County Commissioners did not act in a quasi-judicial capacity because the board refused Yakama Nation's request to hold a hearing and, therefore, RCW 37.70C.040(4)(b) did not apply. According to Yakama Nation, YCC 16B.09.050(5) terminated the administrative appeal process for a land use decision on a final written decision for purposes of LUPA. RCW 34.70C.040(4)(a) applied because Noelle Madera's letter on April 13, 2018 is the earliest written decision that could be considered to determine the date the limitation period began. Therefore, Yakama Nation insisted that it timely filed and served its LUPA petition.

The superior court ruled that the Yakima County Board of County Commissioners did *not* act in a quasi-judicial capacity. The court further ruled that the April 13, 2018 letter constituted the written decision that qualified as the final administrative action for

8

purposes of chapter 36.70C RCW. Because Yakama Nation timely filed its 2018 LUPA

action, the court also refused to dismiss the 2017 action.

LAW AND ANALYSIS

This appeal concerns solely whether Yakama Nation timely filed its 2018 LUPA

action. We do not comment on the validity of the 2017 action.

The land use petition act, chapter 36.70C RCW, governs our decision. LUPA is

the exclusive means of judicial review of land use decisions. RCW 36.70C.030. RCW

36.70C.040 identifies the date on which the government issues its land use decision and

announces the limitation period for filing the LUPA petition. The lengthy statute reads in

pertinent part:

> (1) Proceedings for review under this chapter shall be commenced by filing a land use petition in superior court.
> (2) A land use petition is barred, and the court may not grant review, unless the petition is *timely filed* with the court and timely served on the following persons who shall be parties to the review of the land use petition:
> . . . .
> (3) The petition is timely if it is filed and served on all parties listed in subsection (2) of this section *within twenty-one days of the issuance of the land use decision.*
> (4) For the purposes of this section, *the date on which a land use decision is issued is:*
> (a) *Three days after a written decision is mailed* by the local jurisdiction or, if not mailed, the date on which the local jurisdiction provides notice that a written decision is publicly available;
> (b) *If the land use decision is made by ordinance or resolution by a legislative body sitting in a quasi-judicial capacity, the date the body passes the ordinance or resolution;* or

> (c) If neither (a) nor (b) of this subsection applies, the date the decision is entered into the public record.

(Emphasis added.) We do not know why the statute creates different times for beginning the running of the deadline for filing depending on whether a legislative body sits in a quasi-judicial role or other capacity.

RCW 36.70C.040, in the setting of our appeal, raises two discrete questions. First, did the Yakima County Board of County Commissioners sit in a quasi-judicial capacity when reviewing and resolving Yakama Nation's appeal from the hearing examiner's decision? Second, did Resolution 131-2018 constitute the "land use decision" for purposes of RCW 36.70C.040(4)(b)? If we answer both questions in the affirmative, the LUPA limitation period commenced to run on April 10. In turn, Yakama Nation missed the deadline for filing its petition when it filed on May 2, 2018, twenty-two days later. RCW 36.70C.040(4)(b). If we answer either question in the negative, Yakama Nation timely filed its 2018 petition. The limitation period started to flow on April 16, three days after planner Noelle Madera sent Yakama Nation the e-mail. RCW 36.70C.040(4)(a). The Nation then filed its petition within sixteen days. We first address whether the Yakima County Board of County Commissioners sat in a quasi-judicial capacity.

No. 36334-1-III
*Confederated Tribes and Bands of the Yakama Nation v. Yakima County*

Quasi-Judicial Capacity

The term "quasi-judicial" connotes an executive or administrative body performing a judicial function by adjudicating facts. Courts generally enjoy broader review authority of decisions made by a legislative or administrative body sitting in a quasi-judicial capacity as opposed to law making or rule making functions of such bodies. The law demands more stringent procedural and substantive guarantees in quasi-judicial hearings. *Edwards v. City Council of City of Seattle*, 3 Wn. App. 665, 667, 479 P.2d 120 (1970). Uniquely, in this appeal, one of the parties benefited by these increased protections asks this court to decline characterizing the government entity's decision as quasi-judicial. Such a declination would permit avoidance of the limitation period, but would conversely adjudge the Yakima County Board of County Commissioners' decision to be legislative in nature and thereby nearly render the decision immune from review by a court.

The Washington Supreme Court, in *Raynes v. City of Leavenworth*, 118 Wn.2d 237, 821 P.2d 1204 (1992), heralded a four-part test for lower courts to apply when assessing whether a legislative body's action represents quasi-judicial or legislative conduct. The test asks (1) whether the court could have been charged with the duty at issue in the first instance, (2) whether the courts have historically performed such duties, (3) whether the action of the state or municipal body involves application of existing law to past or present facts for the purpose of declaring or enforcing liability rather than a

11

response to changing conditions through the enactment of a new general law of prospective application, and (4) whether the action more clearly resembles the ordinary business of courts, as opposed to those of legislators or administrators. *Raynes v. City of Leavenworth*, 118 Wn.2d at 244-45 (1992). Quasi-judicial actions involve the application of current law to a factual circumstance, while a legislative action entails the policymaking role of a legislative body. *Raynes v. City of Leavenworth*, 118 Wn.2d at 245.

This court, twelve years before *Raynes v. City of Leavenworth*, more succinctly described the quasi-judicial function. When sitting in a quasi-judicial capacity, the government entity limits its review to facts presented by litigants; whereas, the entity acting in a legislative capacity listens to a broad array of facts to address a wide problem and issues a prospective decision for the public at large. *Edwards v. City Council of City of Seattle*, 3 Wn. App. at 667 (1970).

In applying the four-part test, we first study sections of the Yakima County Code that control the board of county commissioners' review of a hearing examiner's upholding of a conditional use permit. Yakima County Code 16B.09 authorizes the board of county commissioners to review administrative appeals from the hearing examiner's decision. The hearing examiner issued its final decision on January 29, 2018 after conducting an open record proceeding, gathering evidence, hearing argument, and performing an independent review. Yakama Nation timely filed its administrative appeal

12

of the hearing examiner's decision to the board of county commissioners. The board

conducted a closed record appeal pursuant to YCC 16B.09.050 and former YCC

16B.09.055(2015) and reviewed the Nation's argument and the record provided from the

hearing examiner. Under YCC 16B.09.050(3), the board must deny the appeal if the

appellant fails to carry the burden to prove substantial evidence did not support the

hearing examiner's decision. The Yakima County Board of County Commissioners

disposed of the appeal at a public meeting pursuant to YCC 16B.09.050(1)-(3) and

passed Resolution 131-2018 on April 10, 2018 to affirm the hearing examiner's decision

and to deny Yakama Nation's appeal. The board's decision to affirm implies that the

board determined that material and substantial evidence supported the hearing examiner's

decision.

Part one of the four-part test in *Raynes v. City of Leavenworth* asks whether the

superior court could have been charged with the duty at issue in the first instance.

YCC 16B.09.050 and former YCC 16B.09.055 assigns the board of county

commissioners with the duty to hear administrative appeals from the hearing examiner.

The code does not assign the court with this duty. Nevertheless, the first prong of the test

does not ask whether the court was in fact charged with the decision, but whether the

court could have been assigned the task of rendering the decision on appeal from the

hearing examiner. Assuming the Yakima County Code did not consign the duty of

review to the board of county commissioners, the hearing examiner's decision would

13

have been the final decision of the county subject to review by the superior court under LUPA. RCW 36.70C.020 and .030.

Question two of the four-part test in *Raynes* asks whether the courts have historically performed such duties. Historically, the law permitted a superior court to review a municipality's land use decisions through a writ of certiorari. RCW 36.70C.030(1).

Part three of the *Raynes v. City of Leavenworth* four-part test asks whether the action of the municipal corporation involves application of existing law to past or present facts for the purpose of declaring or enforcing liability rather than a response to changing conditions through the enactment of a new general law of prospective application. In Yakama Nation's challenge to the hearing examiner's decision, the Yakima County Board of County Commissioners applied the existing law to the facts to render a decision. The board limited its review of facts to the facts presented by the parties to the appeal and only resolved the questions presented by the parties. The Board did not enact prospective legislation for the public.

Part four of the four-part test in *Raynes* asks whether the action more clearly resembles the ordinary business of courts, as opposed to those of legislators or administrators. Question four overlaps the content of question three. The Yakima County Board of County Commissioners performed in an administrative appellate review capacity when it applied existing law to the facts and passed a resolution to affirm the

14

decision of the hearing examiner. This act taken by the board resembles the ordinary business of a court as opposed to that of legislators or administrators. *Raynes v. City of Leavenworth*, 118 Wn.2d at 244-45 (1992).

Yakama Nation contends that, because the board of county commissioners refused to accept the Nation's closed record hearing request, the board must not have acted in a quasi-judicial capacity. We disagree. Despite not allowing oral argument from Yakama Nation during the April 10 hearing, the board of county commissioners functioned similar to that of a court. It reviewed the facts and the arguments presented by the parties before the hearing examiner. Courts, including this intermediate appellate court, often only review the record from the adjudicator below without any additional input from the parties. Such a process does not turn judicial review into a legislative act.

Yakama Nation emphasizes that the Yakima County Board of County Commissioners classified its April 10 gathering as a "public meeting" rather than a "public hearing." The Nation also highlights that the board chairman did not introduce its consideration of the appeal, on April 10, as a "hearing." We brand the Nation's distinction between a "hearing" and a "meeting" as a false alternative. Logic does not preclude a meeting from being a hearing and a hearing from being a meeting.

The quasi-judicial capacity factors announced in *Raynes v. City of Leavenworth* omit any reference to conducting a formal evidentiary hearing or affording oral argument. *Raynes* does not identify the label used by the government body for an assembly, during

15

which it decides an appeal, as a factor in classifying whether a decision springs from a quasi-judicial capacity function or a legislative role. Based on the four-part test in *Raynes*, we hold that the Yakima County Board of County Commissioners acted in a quasi-judicial capacity when it passed a resolution to affirm the hearing examiner's decision.

Issuance of the Land Use Decision

Because we hold that the Yakima County Board of County Commissioners acted in a quasi-judicial capacity, we must next determine how this holding impacts a ruling on when the board of county commissioners issued its land use decision. To repeat, the relevant portion of RCW 36.70C.040 reads:

> (3) The petition is timely if it is filed and served on all parties listed in subsection (2) of this section *within twenty-one days of the issuance of the land use decision*.
> (4) For the purposes of this section, *the date on which a land use decision is issued is:*
> . . . .
> (b) If the land use decision is made by ordinance or resolution by a legislative body sitting in a quasi-judicial capacity, the date the body passes the ordinance or resolution.

(Emphasis added.) We reckon the answer straightforward. RCW 36.70C.040(4)(b) deems the date triggering the commencement of the twenty-one days to be the date the board of county commissioners passed the resolution. The board adopted Resolution 131-2018, which affirmed the hearing examiner's approval of Granite Northwest's conditional use permit, on April 10, 2018. Despite this answer, we review Yakama

16

Nation's arguments because of the importance of this appeal to the Nation.

Yakama Nation robustly relies on YCC 16B.09.050(5), which reads:

> The Board's final written decision shall constitute a final administrative action for the purposes of Chapter 36.70C RCW.

Yakama Nation's argument assumes that the Yakima County Code takes precedence over the state LUPA and that YCC 16B.09.050(5) reads differently from RCW 36.70C.040. We reject both assumptions. Neither LUPA nor any case law permits a local ordinance or code to conflict with RCW 36.70C.040's language as to the day of activation of the twenty-one day limitation period. Anyway, YCC 16B.09.050(5) does not conflict with RCW 36.70C.040(3) and (4), because the county code section does not proclaim that the final written decision constitutes something other than the resolution of the board of county commissioners' affirming the land use decision. The county code does not define what constitutes the board's final written decision.

Yakama Nation concedes that Resolution 131-2018 constitutes the written decision for YCC 16B.09.050(5), if not for RCW 36.70C.040. Nevertheless, the Nation rejects the date of the adoption of the written decision as the initiating day for the limitation period. Yakama Nation may base its argument on the assumption that the Yakima County Board of County Commissioners acted in a legislative capacity, but the Nation's argument may also extend to the application of RCW 36.70C.040(4)(b), which assumes the board acted in a quasi-judicial capacity. The Nation argues that the earliest

17

date for issuance of the written decision would be April 13, 2018, the day when Yakima County mailed notice of the resolution and attached a copy of the resolution. Neither YCC 16B.09.050(5) nor RCW 36.70C.040(4)(b) declare the date of mailing the written resolution to be the commencement of the limitation period.

Yakama Nation may also contend that, even if the board of county commissioners sat in a quasi-judicial capacity, RCW 36.70C.040(4)(a), not (4)(b), controls because the Yakima County Code required the board to issue a written decision. The Nation focuses on the phrase "written decision" in RCW 36.70C.040(4)(a) and the Yakima County Code, which directs the board to issue a written decision. Although a resolution can be considered a written decision, we conclude RCW 36.70C.040(4)(b), not (4)(a), governs. The term "resolution" is narrower in scope than "written decision." A specific statute controls over a general statute. *State v. Conway*, 8 Wn. App. 2d 538, 547-48, 483 P.3d 1235 (2019).

As codified in RCW 36.70C.040(4)(b), when a legislative body, sitting in a quasi-judicial capacity, renders a land use decision by ordinance or resolution, the date of that decision is "the date the body passes the ordinance or resolution." *King's Way Foursquare Church v. Clallam County*, 128 Wn. App. 687, 691, 116 P.3d 1060 (2005). Representatives of Yakama Nation attended the April 10 board of county commissioners' meeting and knew the board adopted the resolution on that date. The April 13 e-mail confirmed the board adopted the resolution on April 10.

18

Planner Noelle Madera's April 13 e-mail read that: "At this point, all administrative appeals have been exhausted." CP at 252. The letter does not identify "this point" as April 13 or state that the "this point" constitutes the date that begins the twenty-one day period to file any LUPA petition. Madera does not identify her letter as the date of the resolution or decision. Regardless, Noelle Madera lacked any authority to issue a written decision.

We deem *Northshore Investors, LLC v. City of Tacoma*, 174 Wn. App. 678, 301 P.3d 1049 (2013) controlling. In *Northshore Investors*, our high court ruled that a city clerk's letter informing parties of the city council's written affirmation of a hearing examiner's decision did not constitute the final land use decision. The Supreme Court characterized the clerk's letter as a notice of the appeal decision and not a written decision. The court highlighted that no member of the city council signed the letter and the letter did not claim the clerk forwarded the city council decision at the behest of the council.

Washington appellate decisions sometimes refer to an untimely LUPA action as ridding the superior court of jurisdiction of the action. *Lakeside Industries v. Thurston County*, 119 Wn. App. 886, 900, 83 P.3d 433 (2004); *Overhulse Neighborhood Association v. Thurston County*, 94 Wn. App. 593, 597, 972 P.2d 470 (1999). We assume that these decisions reference subject matter jurisdiction rather than personal jurisdiction since the parties always have some connection to land located in the county.

19

The decisions rely on RCW 36.70C.040(2), which declares:

> A land use petition is *barred*, and the court *may not grant review*, unless the petition is timely filed with the court and timely served on the following persons who shall be parties to the review of the land use petition.

(Emphasis added.) The term "bar" connotes a heavy-handed rejection of a LUPA petition by the superior court, but the word does not impede the court's subject matter jurisdiction.

Based on *In re the Estate of Reugh*, ___ Wn. App. 2d ___, 447 P.3d 544, 560 (2019), *In re Marriage of McDermott*, 175 Wn. App. 467, 307 P.3d 717 (2013), and *Cole v. Harveyland, LLC*, 163 Wn. App. 199, 258 P.3d 70 (2011), we question any conclusion that the superior court lacks jurisdiction. An untimely filing of a petition does not prevent the court from possessing subject matter jurisdiction. The untimely petition merely requires the court to dismiss the petition as untimely.

CONCLUSION

We reverse the superior court and dismiss Yakama Nation's LUPA petition. The Nation untimely filed the petition.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

20

No. 36334-1-III
*Confederated Tribes and Bands of the Yakama Nation v. Yakima County*


_____ Fearing, J.
Fearing, J.

WE CONCUR:

_____
Korsmo, J.

_____
Siddoway, J.

21